No. 25-1555

# United States Court of Appeals

for the First Circuit

JASON GRANT, ALLISON TAGGART, LISA PETERSON, & SAMANTHA LYONS,

*Plaintiffs-Appellants*,

v.

TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS, BEVERLY J. CANNONE IN HER OFFICIAL CAPACITY AS JUSTICE OF THE SUPERIOR COURT, GEOFFREY NOBLE, AS COLONEL OF THE MASSACHUSETTS STATE POLICE, & MICHAEL W. MORRISSEY, IN HIS OFFICIAL CAPACITY AS THE NORFOLK COUNTY DISTRICT ATTORNEY,

*Defendants-Appellees*.

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS DENYING A PRELIMINARY INJUNCTION

**BRIEF OF APPELLEES TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS AND HON. BEVERLY J. CANNONE**

ANDREA JOY CAMPBELL
*Massachusetts Attorney General*

Robert A. Fisher, 1st Cir. No. 121676
*Special Assistant Attorney General*
Nixon Peabody LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109
(617) 345-1000

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION......................................................................1

STATEMENT OF THE ISSUES........................................................................1

STATEMENT OF THE CASE............................................................................2

    A.   Karen Read Trial and Related Buffer Zone Orders....................................2

    B.   Prior First Circuit Appeal of the 2025 Buffer Zone Order........................5

    C.   The Supplemental Buffer Zone Order......................................................6

STANDARD OF REVIEW ...............................................................................9

SUMMARY OF THE ARGUMENT .................................................................10

ARGUMENT ....................................................................................................13

   I.   Federal Courts No Longer Have Jurisdiction..........................................13

    A.  There Is No Live Controversy.................................................................13

    B.  No Mootness Exception Applies..............................................................15

   II.   Plaintiffs' Claims Are Constitutionally Barred.........................................17

    A.  The Eleventh Amendment Bars All Claims Against the Trial Court ......17

    B.  The Eleventh Amendment Bars All Claims Against Justice Cannone Because Plaintiffs Request Only Retrospective Relief ............................18

    C.  Justice Cannone Is Immune from Suit ....................................................19

       1.  Justice Cannone is immune from all suits because she maintains common law judicial immunity.....................................................19

       2.  Justice Cannone is immune from this suit under 42 U.S.C. § 1983 ...20

    D.  The Sweeping Relief Now Sought by Plaintiffs Goes Well Beyond the Relief Sought in the Complaint .................................................................22

   III.   Plaintiffs Are Not Likely to Succeed on the Merits....................................23

    A.  First Amendment Claim ..........................................................................23

       1.  The Supplemental Order Is Content Neutral......................................23

       2.  The Commonwealth Has a Significant Interest In Protecting a Criminal Defendant's Right to a Fair Trial .......................................25

       3.  The Supplemental Order Is Narrowly Tailored .................................28

Table of Contents (continued)

(i)    Justice Cannone considered alternative measures prior to issuing the Supplemental Order ..................................................................................28

(ii)    The Supplemental Order did not burden more speech than necessary to safeguard Ms. Read's right to a fair trial .............................31

(iii)    The mens rea requirement narrowly tailored the Supplemental Order ....................................................................................................34

(iv)    The Supplemental Order left open alternative channels for expression.................................................................................................37

B.    Plaintiffs Are Not Likely to Succeed on the Merits of Their Due Process Claim ................................................................................................................38

    1.    Massachusetts Courts Have Inherent Authority to Take Actions Necessary to Ensure Fair Criminal Trials ...........................................39

    2.    Plaintiffs Had Ample Notice and Opportunity to be Heard—Indeed, One Was Heard ..........................................................................41

    3.    The Supplemental Order Is Not Vague ..............................................43

IV.  Plaintiffs Cannot Satisfy Any of the Remaining Preliminary Injunction Factors ...............................................................................................................45

A.    Plaintiffs Cannot Show Irreparable Harm .............................................46

B.    There Are No Hardships Left to Balance .................................................47

C.    The Public Has No Interest in An Expired Order ...................................47

CONCLUSION ........................................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*,
705 F.3d 44 (1st Cir. 2013)..................................................................14, 15, 16

*Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*,
794 F.3d 168 (1st Cir. 2015)....................................................................9, 23, 45

*Ashcroft v. Am. Civ. Liberties Union*,
542 U.S. 656 (2004)...........................................................................................32

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
239 U.S. 441 (1915)...........................................................................................41

*Boston Bit Labs v. Baker*,
11 F.4th 3 (1st Cir. 2021)....................................................................10, 13, 14

*Brown v. Newberger*,
291 F.3d 89 (1st Cir. 2002)................................................................................17

*Casey v. City of Newport*,
308 F.3d 106 (1st Cir. 2002)..............................................................................28

*Chen v. Holder*,
703 F.3d 17 (1st Cir. 2012)................................................................................31

*Cline v. Burke*,
682 F. Supp. 3d 125 (D. Mass. 2023).................................................................17

*Cox v. State of La.*,
379 U.S. 559 (1965).....................................................................................passim

*Cruz v. Farquharson*,
252 F.3d 530 (1st Cir. 2001)......................................................................13, 15

*Cutting v. City of Portland, Me.*,
802 F.3d 79 (1st Cir. 2015)..................................................................24, 25, 28

*DuLaurence v. Woodlock*,
No. 1:18-CV-11430-JL, 2019 WL 12070290 (D. Mass. Aug. 6, 2019) ............20

*Edelman v. Jordan*,
    415 U.S. 651 (1974) ........................................................................... 17

*Elrod v. Burns*,
    427 U.S. 347 (1976) ........................................................................... 46

*Ford v. Bender*,
    768 F.3d 15 (1st Cir. 2014) ............................................................... 10

*Frank v. Lee*,
    84 F.4th 1119 (10th Cir. 2023) ......................................................... 36

*Frese v. Formella*,
    53 F.4th 1 (1st Cir. 2022) ............................................................ 44, 45

*Globe Newspaper Co. v. Beacon Hill Architectural Com'n*,
    100 F.3d 175 (1st Cir. 1996) ............................................................. 24

*Grant v. Trial Ct. of Mass.*,
    137 F.4th 1 (1st Cir. 2025) ......................................................... *passim*

*Grant v. Trial Ct. of Mass.*,
    No. 25-cv-10770, 2025 WL 1147752 (D. Mass. Apr. 11, 2025) ........... 4, 38

*Green v. Mansour*,
    474 U.S. 64 (1985) ............................................................................. 19

*Harris v. Univ. of Mass. Lowell*,
    43 F.4th 187 (1st Cir. 2022) ........................................................ 11, 16

*Hill v. Colorado*,
    530 U.S. 703 ...................................................................................... 45

*Rosie D. ex rel. John D. v. Swift*,
    310 F.3d 230 (1st Cir. 2002) ............................................................. 18

*Joubert v. Green*,
    No. 4:22-CV-40111-IT, 2023 WL 6218127 (D. Mass. Sept. 25,
    2023) .................................................................................................. 19

*Lanier Pro. Servs., Inc. v. Ricci*,
    192 F.3d 1 (1st Cir. 1999) ................................................................. 10

iv

*Mazurek v. Armstrong*,
520 U.S. 968 (1997)................................................................9

*McCullen v. Coakley*,
573 U.S. 464 (2014)......................................................24, 25, 37

*Mireles v. Waco*,
502 U.S. 9 (1991).................................................................20

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010)................................................................9

*Moore v. Harper*,
600 U.S. 1 (2023)................................................................13

*Naser Jewelers, Inc. v. City of Concord, NH*,
513 F.3d 27 (1st Cir. 2008)................................................*passim*

*Neo Gen Screening, Inc. v. New Eng. Newborn Screening Program*,
187 F.3d 24 (1st Cir. 1999).......................................................17

*Newspaper Guild of Salem, Local 105 of the Newspaper Guild v.
Ottaway Newspapers, Inc.*,
79 F.3d 1273 (1st Cir. 1996)......................................................15

*Nieves-Marquez v. Puerto Rico*,
353 F.3d 108 (1st Cir. 2003).......................................................9

*Nken v. Holder*,
556 U.S. 418 (2009)................................................................9

*O'Neil v. Canton Police Dep't*,
761 F. Supp. 3d 299 (D. Mass. 2024).........................................26, 44

*O'Neil v. Town of Nantucket*,
711 F.2d 469 (1st Cir. 1983)......................................................41

*Oakville Dev. Corp. v. FDIC*,
986 F.2d 611 (1st Cir. 1993)......................................................15

*Picard v. Magliano*,
42 F.4th 89 (2d Cir. 2022) ...................................................12, 26

*Pietrangelo v. Sununu*,
15 F.4th 103 (1st Cir. 2021)..................................................................3

*Preiser v. Newkirk*,
422 U.S. 395 (1975)..........................................................................13

*Press-Enterprise Co. v. Superior Court*,
464 U.S. 501 (1984)..........................................................................26

*Reed v. Town of Gilbert, Az.*,
576 U.S. 155 (2015)......................................................................23, 24

*Ridley v. Massachusetts Bay Transp. Auth.*,
390 F.3d 65 (1st Cir. 2004)................................................................44

*Roe et al. v. Healey et al.*,
78 F.4th 11 (1st Cir. 2023)................................................................15

*In re Ruiz*,
83 F.4th 68 (1st Cir. 2023)................................................................13

*Ryan v. U.S. Immigr. & Customs Enf't*,
974 F.3d 9 (1st Cir. 2020)................................................................23

*Schenck v. Pro-Choice Network of W.N.Y.*,
519 U.S. 357 (1997)..........................................................................20

*Town of Barnstable v. O'Connor*,
786 F.3d 130 (1st Cir. 2015)..............................................................18

*Town of Portsmouth v. Lewis*,
813 F.3d 54 (2016)..........................................................................23

*United States v. Kokinda*,
497 U.S. 720 (1990)..........................................................................41

*United States v. Sanchez-Gomez*,
584 U.S. 381 (2018)..........................................................................13

*United States v. Trump*,
88 F.4th 990 (D.C. Cir. 2023)......................................................26, 34

*United States v. Tsarnaev*,
No. 13-cv-10200, ECF No. 988 (D. Mass. Dec. 30, 2014) ...............................33

*US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC*,
121 F.4th 339 (1st Cir. 2024)...........................................................................10

*Verlo v. Martinez*,
820 F.3d 1113 (10th Cir. 2016) .......................................................................41

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989).................................................................................*passim*

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982).........................................................................................47

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)...............................................................................................9

*Ex Parte Young*,
209 U.S. 123 (1908).........................................................................................18

*Zenon v. Guzman*,
924 F.3d 611 (1st Cir. 2019)............................................................................19

*Zenon v. Guzman*,
No. 3:16-CV-30129-MAP, 2018 WL 324715 (D. Mass. Jan. 8,
2018) .......................................................................................19, 20, 21, 22

**State Cases**

*Chief Admin. Just. of the Trial Court v. Labor Relations Comm'n*,
404 Mass. 53 (1989) ........................................................................................39

*Commonwealth v. Campbell*,
394 Mass. 77 (1985) ........................................................................................30

*Commonwealth v. Karen Read*,
Case No. 2282CV00117 (Norfolk Sup. Ct. 2024), Dkt. 254......................*passim*

*Commonwealth v. Underwood*,
358 Mass. 506 (1970) ................................................................................12, 26

*Crocker v. Justs. of Superior Ct.*,
  208 Mass. 162 (1911) ........................................................39

*First Just. of Bristol Div. of Juvenile Court Dep't. v. Clerk-Magistrate
  of Bristol Div. of Juvenile Court Dep't.*,
  438 Mass. 387 (2003) ........................................................39

*Matter of Impounded Case*,
  491 Mass. 109 (2022) ........................................................39

*O'Coin's, Inc. v. Treasurer of the County of Worcester*,
  362 Mass. 507 (1972) ........................................................39

*Republican Co. v. Appeals Court*,
  442 Mass. 218 (2004) ........................................................43

*Spicuzza v. Commonwealth*,
  494 Mass. 1005 (2024) ...........................................3, 42, 43

*State v. LaFrance*,
  124 N.H. 171 (1983) ..........................................................39

*Wong v. Liu*,
  472 Mass. 208 (2015) ........................................................27

**Federal Statutes**

28 U.S.C. § 1292(a)(1) .............................................................1

28 U.S.C. § 1331 .......................................................................1

42 U.S.C. § 1983 ................................................................11, 21

**State Statutes**

Mass. Gen. Laws ch. 268 §§ 13A & 13B ...............................33

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this action under 28 U.S.C. § 1331, which provides the district courts with jurisdiction over civil actions arising under federal law. The district court denied in part, and granted in part, Plaintiffs' second request for preliminary relief following remand from this Court. ADD020.[1] Plaintiffs filed a notice of appeal on June 6, 2025. ADD021. This Court has statutory jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

1. Whether federal courts have jurisdiction over Plaintiffs' claims against Defendants Hon. Beverly J. Cannone and the Trial Court of the Commonwealth of Massachusetts where the relief Plaintiffs seek can no longer be afforded by a federal court, and, in all events, is barred by federal law and the Eleventh Amendment.

2. Whether the district court abused its discretion in denying Plaintiffs' request for preliminary relief against a constitutionally sufficient judicial order creating a limited buffer zone around the Norfolk County Courthouse during a highly publicized criminal trial where Plaintiffs fail to establish a likelihood of success on the merits of their claims.

---

[1] References to the Appellants' / Plaintiffs' Opening Brief will be labeled as Br. ___. References to the Plaintiffs' Brief Addendum will be labeled as ADD___. References to the Plaintiffs' Appendix will be labeled as AA___.

## STATEMENT OF THE CASE

### A.     Karen Read Trial and Related Buffer Zone Orders

On June 9, 2022, Karen Read was indicted—in connection with the death of a Boston Police Officer—on charges of murder, manslaughter in the course of driving under the influence, and driving under the influence.  Her first criminal trial ended with a hung jury, and her re-trial resulted in acquittals on the homicide counts. The case drew extensive media coverage and prompted significant protests outside the Norfolk County Superior Court during both trials.  In response, the presiding judge, Defendant Honorable Beverly J. Cannone, issued orders in each trial establishing a "buffer zone" around the courthouse to address trial disruptions associated with the protests.  This First Amendment litigation ensued.

Karen Read's first trial—which was nationally publicized—began in March 2024.  At that time, state prosecutors requested a 500-foot buffer zone surrounding the Norfolk Superior Courthouse to insulate trial participants from public harassment and undue influence.  *Commonwealth v. Read*, Case No. 2282CV00117 (Norfolk Sup. Ct. 2024) ("*Read*"), Dkt. 254.  Justice Cannone presided over the trial and partially granted the prosecutors' request; she entered a 200-foot buffer zone limiting demonstrations on courthouse property and on public streets surrounding the Norfolk Superior Courthouse by which trial participants would enter. *Commonwealth v. Read*, Dkt. 274 (the "2024 Order").  A group of individuals sought

relief in state court from the 2024 Order; the Supreme Judicial Court ("SJC") upheld the 2024 Order, and it remained in place throughout Ms. Read's first trial. *See Spicuzza v. Commonwealth*, 494 Mass. 1005, 1008, 232 N.E.3d 145, 149 (2024). Despite the 2024 Order, demonstrators on surrounding streets and in an open area directly west of the courthouse (which was not within the scope of the 2024 Order), disrupted the trial and jury deliberations with chants and yelling, and by harassing trial participants as they entered and exited the courthouse. *Read*, Dkt. 630. The jury was deadlocked, and Justice Cannone declared a mistrial on July 1, 2024. Prosecutors opted to retry the case.

Opening statements in Ms. Read's second trial occurred on April 22, 2025. Given that Ms. Read's case generated significant additional media attention between her first and second trials,[2] state prosecutors expected similar public disruption during the second trial and requested a fresh buffer zone order, which Justice Cannone granted (the "2025 Buffer Zone Order"). *Read*, Dkt. 611. The 2025 Buffer Zone Order extended the prior Order by including the area on the west side of the courthouse from which "screaming and yelling" was "clearly heard" in the courtroom by jurors during Ms. Read's first trial, AA033, and by prohibiting within the buffer zone certain expression-bearing clothing related to evidence and trial

---

[2] *See, e.g.*, *A Body in the Snow: The Trial of Karen Read*, (HBO MAX, released March 17, 2025). This Court can take judicial notice of television broadcasts. *See Pietrangelo v. Sununu*, 15 F.4th 103, 106 n.1 (1st Cir. 2021) (citation omitted).

participants. *Id.* Justice Cannone determined that the requested extensions were justified because Ms. Read's right to a fair trial and the fair administration of justice were potentially jeopardized by jurors and witnesses being subjected to "individuals … loudly chanting … about [trial participants]," or by persons displaying opinions as to "matters which may be in evidence during the trial" or "viewpoints as to the guilt or innocence of [Ms. Read]" on their clothing or signage. AA033-34.

On April 1, 2025, three weeks before opening statements, Plaintiffs—four members of the public who protested within and outside the buffer zone—sued in federal court, claiming that the 2025 Buffer Zone Order violated their First and Fourteenth Amendment rights. AA001–15. Plaintiffs sought declaratory and injunctive relief in federal court against the Trial Court and Justice Cannone (in her official capacity) with respect to the 2025 Buffer Zone Order, including by moving for a temporary restraining order barring its enforcement. AA007–10. On April 11, 2025, the district court denied Plaintiffs' motion, finding that they were unlikely to succeed on the merits of their First Amendment and due process claims. *Grant v. Trial Ct. of Mass.*, No. 25-cv-10770, 2025 WL 1147752, at *1 (D. Mass. Apr. 11, 2025). One week later, on April 17, Plaintiffs appealed the district court's decision and moved for emergency relief pending appeal, which this Court denied. AA217–28.

**B. Prior First Circuit Appeal of the 2025 Buffer Zone Order**

The parties briefed the appeal on an expedited schedule and this Court held oral argument on May 5. *Grant v. Trial Ct. of Mass.*, 137 F.4th 1, 4 (1st Cir. 2025) ("*Grant I*"). At oral argument, the court found that Plaintiffs conceded two points: *first*, Plaintiffs "clarified that they do not challenge the [2025 Buffer Zone Order] as applied to Courthouse property … public sidewalks and roads—through which trial participants enter and exit the Courthouse," and *second*, Plaintiffs acknowledged "that the Commonwealth may … regulate at least some demonstration-related conduct beyond Courthouse grounds." *Id*. Plaintiffs sought only to enjoin enforcement of the 2025 Buffer Zone Order as applied to "quiet, offsite demonstrations on public property, in areas and at times that do not interfere with trial participants' entrance into and exit from the [Norfolk Superior] Courthouse, that do not interfere with the administration of justice, and that will not influence any trial participants in the discharge of their duties." *Id*.

This Court did not reach the constitutional merits, noting that the 2025 Buffer Zone Order lacked a *mens rea* requirement and was "potentially" not the most narrowly tailored way of ensuring Ms. Read's right to a fair trial because it "likely applie[d] equally to speech directed toward random passersby and speech directed toward trial participants." *Id*. at 5. Citing the "evolved and narrowed" positions advanced by Plaintiffs at oral argument, this Court vacated (but did not reverse) the

underlying decision and remanded the case for further proceedings to determine whether the Commonwealth's enforcement of the 2025 Buffer Zone Order was, in fact, sufficiently narrow to further the Commonwealth's compelling interest.  *Id*. at 4, 6.  Alternatively, this Court suggested, the state court could obviate the need for further clarification "by limiting the Order to demonstrations directed toward interfering with the administration of justice or influencing trial participants."  *Id*. at 6.

### C.  The Supplemental Buffer Zone Order

On May 15, 2025, Justice Cannone issued a supplemental order that modified the 2025 Buffer Zone Order (the "Supplemental Order").  *See* AA336–37.  The Supplemental Order, consistent with this Court's opinion in *Grant I*, limited its application to actions "intended to influence any judge, juror, witness, or court officer … within the buffer zone" on non-courthouse property and ancillary walkways.  *Id*.; *Grant*, 137 F.4th at 6.  To remove any doubt, the Supplemental Order explicitly permitted "quiet, offsite demonstrations on public property, in areas and at times that do not interfere with trial participants' entrance into or exit from the [Norfolk County Superior] Courthouse."  AA336–37.  Further, the Supplemental Order permitted "any person whose activity has been restricted" to seek review in the superior court, which "shall be heard as expeditiously as possible."  *Id*.

On May 16, one day after the Supplemental Order was implemented, Plaintiff

Grant claimed that Massachusetts State Police Officers "threatened" him (AA332–33), and "barred [him] from protesting" across the street from the Norfolk Superior Courthouse.  AA357.  On May 19, consistent with the review process established by the Supplemental Order, Plaintiff Grant sought review in the superior court, contesting application of the Supplemental Order as applied to him.  Two days later, on May 21, the superior court (*Doolin*, J.) concluded that "the record [did] not show that [Grant] was acting in a manner suggesting that he intended to interfere with the administration of justice or influence a trial participant."  AA402.

In parallel, Plaintiffs (including Grant) pressed forward with their claims in the district court.  On May 19, they filed a status report detailing Plaintiff Grant's purported harm suffered as a result of enforcement of the Supplemental Order against him.  AA331–35.  Over the next two weeks, Plaintiffs filed additional status updates and various motions, which the district court construed as a properly filed motion to enjoin the Supplemental Order.  *See* AA339–41; AA353–67; AA390–98.  Defendants opposed, noting that Plaintiffs were seeking relief that went far beyond their Complaint, which was never amended.  AA406.  The district court held oral argument on May 22 (notwithstanding Justice Doolin's order from the prior day granting in part Plaintiff Grant's requested review).

On May 28, the district court granted in part and denied in part Plaintiffs'

motion.[3]  ADD001–020.  The district court refused to enjoin the Supplemental Order fully, finding Plaintiffs' argument that the Supplemental Order is facially unconstitutional was unlikely to succeed given the inclusion of a *mens rea* requirement.  *Id*.  The court separately found that Plaintiff Grant's claim was: (1) not moot; and (2) likely to succeed on his as-applied challenge to the enforcement of the Supplemental Order, "although it is unclear from the record exactly when Mr. Grant" was prohibited from protesting.  ADD007–08.  The district court did not address Justice Doolin's May 21 order.  *Id*.  On June 6, Plaintiffs brought the instant appeal and sought emergency injunctive relief pending appeal, which this Court denied. AA496–513.  Plaintiffs did not move for an accelerated briefing schedule.

A jury acquitted Karen Read of all homicide charges on June 18.  *Read*, Dkts. 726.1, 726.3.  The Supplemental Order existed only "during trial" and thus ended

---

[3] There are three other overlapping yet distinct cases pending in the district court. *See Delgado v. Trial Court of the Commonwealth of Massachusetts, et al.*, No. 25-cv-10818-MJJ (D. Mass.); *Derosier et al. v. Noble et al.*, No. 25-cv-10812-MJJ (D. Mass); and *Walsh v. Noble et al.*, No. 25-cv-11344-MJJ (D. Mass).  The Trial Court Defendants/Appellees were dismissed from the *Delgado* matter, are not party to the *Derosier* matter, and do not expect to be served in *Walsh*.

Plaintiffs/Appellants in *this* matter previously sought to consolidate all four matters in the district court before oral argument on the first motion for injunctive relief, which the district court denied.  *Grant v. Trial Court of the Commonwealth of Massachusetts*, No. 25-cv-10770-MJJ (D. Mass.), ECF Nos. 34, 41.  Then, during a May 23, 2025 a hearing, the district judge stated that he had "reconsidered [it] and [he] asked for [the other three cases] back."  AA466.  So while the immediately appealed order addresses non-parties to this appeal, the only parties seeking relief in this appeal are Jason Grant, Allison Taggart, Lisa Petersen, and Samantha Lyons.

after Justice Cannone entered the jury's verdict. AA032–34 (Order); AA336–37 (Supplemental Order). Supporters of Ms. Read ran onto the courthouse steps as police lifted the barricades that had demarcated the Buffer Zone. Without an ongoing trial, there have naturally been no further demonstrations.

## STANDARD OF REVIEW

A preliminary injunction is "a drastic and extraordinary remedy," *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), that is "never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, plaintiffs must show: "(1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or lack of friction) between the injunction and the public interest." *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003). The first factor—likelihood of success on the merits—is the "sine qua non of a preliminary injunction. If the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 173 (1st Cir. 2015) (Souter, J.) (citations omitted). "[T]he movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiffs "bear[] the considerable burden of demonstrating that the district court flouted the four-part test for preliminary injunctive relief." *Lanier Pro. Servs., Inc. v. Ricci*, 192 F.3d 1, 3 (1st Cir. 1999). This Court's "review of [the] district court's decision to … deny a preliminary injunction is for abuse of discretion." *US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC*, 121 F.4th 339, 347 (1st Cir. 2024). This Court "examine[s] answers to abstract legal questions de novo, findings of fact for clear error, and judgment calls with significant deference to the trial court." *Id*. Determinations of jurisdictional questions, including mootness, are reviewed de novo. *Ford v. Bender*, 768 F.3d 15, 29 (1st Cir. 2014).

## SUMMARY OF THE ARGUMENT

Plaintiffs have failed to meet their burden of showing that the district court abused its discretion when it denied in part their second request for preliminary relief; however, the issue is now largely academic because the federal courts no longer have jurisdiction. This Court should remand with instructions to dismiss.

*First*, Plaintiffs' claims for injunctive relief are moot and federal courts therefore lack jurisdiction. *Boston Bit Labs v. Baker*, 11 F.4th 3, 8 (1st Cir. 2021) (collecting cases). The Read trial has ended, the buffer zone is gone, and there is no longer an Order to be enjoined: accordingly, there is no live controversy for this Court to decide. Plaintiffs fail to demonstrate that the capable-of-repetition exception applies to their case, as any arguments regarding hypothetical future buffer

zone orders are purely speculative. *See Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 195 (1st Cir. 2022) (collecting cases). This case does not present the extraordinary circumstances required for an exception to the mootness doctrine to apply, and, on this basis alone, this Court should remand with instructions to dismiss.

***Second***, Plaintiffs' claims against Justice Cannone and the Trial Court are barred by the Eleventh Amendment and federal law. Claims against arms of the Commonwealth, like the Trial Court, are barred by the Eleventh Amendment. And because Plaintiffs' Complaint does not seek any cognizable prospective relief against Justice Cannone, the Eleventh Amendment likewise bars Plaintiffs' claims against her. Finally, Justice Cannone is independently and explicitly immune from suits brought under 42 U.S.C. § 1983 under these circumstances. Because Justice Cannone was acting in her judicial capacity while issuing the Supplemental Order and has not violated a declaratory decree, she is immune from suit and there can be no claim arising under § 1983 against Justice Cannone.

***Third***, assuming Plaintiffs can overcome the significant jurisdictional obstacles (they cannot), their merits arguments fare no better—dooming their case before consideration of the remaining preliminary injunction factors. With respect to Plaintiffs' First Amendment challenge, the Supplemental Order is a constitutionally sound, content-neutral regulation that survives intermediate scrutiny. *See, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 802–03 (1989).

The Commonwealth maintains a clear and significant interest in protecting a criminal defendant's right to a fair trial *and* in ensuring the fair, orderly administration of justice in and around the courtroom. The Supplemental Order narrowly tailors its restrictions to effectuate these interests. Plaintiffs' First Amendment arguments fail to engage with the text of the orders, controlling law, or the record.

The Plaintiffs also fail to assert compelling arguments under the Due Process Clause. The Trial Court and Justice Cannone have the inherent authority to ensure that a defendant's right to a fair trial is upheld. *See Commonwealth v. Underwood*, 358 Mass. 506, 511, 265 N.E.2d 577, 582 (1970). Justice Cannone also must ensure that the Court maintains the fair administration of justice. *See, e.g.*, *Picard v. Magliano*, 42 F.4th 89, 104 (2d Cir. 2022). In so doing, Justice Cannone provided Plaintiffs'—and others—sufficient notice and opportunity to be heard. The Supplemental Order did not violate the Due Process Clause.

*Fourth*, Plaintiffs cannot meet their burden of showing that the remaining preliminary injunction factors weigh in their favor. Plaintiffs cannot demonstrate that they will be irreparably harmed in the future as the Supplemental Order—and the buffer zone—no longer exist. There are no hardships to balance or public interests in Plaintiffs' favor.

## ARGUMENT[4]

## I.   FEDERAL COURTS NO LONGER HAVE JURISDICTION.

### A.   There Is No Live Controversy

As a threshold matter, the Court must assure itself of jurisdiction. *In re Ruiz*, 83 F.4th 68, 72–73 (1st Cir. 2023); *see also Moore v. Harper*, 600 U.S. 1, 14 (2023) (citation omitted). Where there is no actual "case" or "controversy," at every stage of the litigation, the federal courts no longer have jurisdiction. *See Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001). Without that "live-controversy character," a case becomes moot and federal courts lack jurisdiction. *Boston Bit Labs v. Baker*, 11 F.4th at 8 (1st Cir. 2021) (collecting cases). To remain subject to federal court jurisdiction, "a dispute 'must be extant at all stages of review, not merely at the time the complaint is filed.'" *United States v. Sanchez-Gomez*, 584 U.S. 381, 385 (2018) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). This matter is moot, and the Court must accordingly dismiss for a lack of subject matter jurisdiction.[5]

---

[4] Appellees Hon. Beverly J. Cannone and the Trial Court of the Commonwealth of Massachusetts join remaining appellees'—Norfolk County District Attorney Michael W. Morrissey and Colonel Geoffrey D. Noble of the Massachusetts State Police—arguments in full and adopt their arguments by reference. *See* Fed. R. App. P. 28(i) ("In case involving more than one appellant or appellee … any party may adopt by reference a part of another's brief.").

[5] The district court below rejected a mootness challenge as to Plaintiff Grant's claims; however, that analysis—which occurred during the pendency of Ms. Read's trial—is now out-of-date. *See* ADD008.

Plaintiffs' operative complaint sought declaratory and injunctive relief against the 2025 Buffer Zone Order. That is not the order on appeal. Rather, it is the Supplemental Order at issue here. ADD021–22 (Notice of Appeal). Even assuming that Plaintiffs properly challenged the Supplemental Order, it was operative only for the duration of Ms. Read's second trial. AA032–34 (Order); AA336–37 (Supplemental Order). That trial has now concluded, and the Supplemental Order is no longer in effect. Put simply, there is no active buffer zone, no Order left to enjoin, and no occasion for a federal court to issue injunctive or declaratory relief. Allowing the Plaintiffs' case to continue would be tantamount to issuing an advisory opinion. *See Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52–53 (1st Cir. 2013) ("*ACLU of Mass.*") ("[I]f events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case.") (internal quotations omitted).

The outcome does not change simply because Plaintiffs also seek declaratory relief. "With limited exceptions, not present here, issuance of a declaratory judgment deeming past conduct illegal is also not permissible as it would be merely advisory." *Id.* at 53 (collecting cases); *see also Boston Bit Labs*, 11 F.4th at 9 (noting that a claim for declaratory relief is moot "if no substantial controversy of sufficient immediacy and reality exists to warrant the issuance of a declaratory judgment."). As in *ACLU of Mass.*, "[t]he controversy here is at this point neither immediate nor

real," and this case must accordingly be dismissed. 705 F.3d at 54.

**B.     No Mootness Exception Applies**

Plaintiffs attempt to manufacture this Court's jurisdiction by invoking a narrow exception to the mootness doctrine (Br. at 12-15): Where questions in a complaint are "capable of repetition, yet evading review," a federal court may exercise its prudential authority and address the issue. *Cruz*, 252 F.3d at 534. This exception requires that: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *ACLU of Mass.*, 705 F.3d at 57 (internal quotations omitted). This Court has "warned, however, that the exception is not a juju, capable of dispelling mootness by mere invocation." *Oakville Dev. Corp. v. FDIC*, 986 F.2d 611, 615 (1st Cir. 1993). To fit into this narrow exception, Plaintiffs must show there is "some demonstrated probability that the same controversy, involving the same parties, will reoccur." *Id.* Plaintiffs do not—and cannot—make such a showing.

Plaintiffs have no credible argument that they are likely to be subject to the terms or enforcement of the Supplemental Order to warrant this Court's review in the instant case. *Cf. Roe et al. v. Healey et al.*, 78 F.4th 11, 23 (1st Cir. 2023) (following expiration of a remote-schooling executive order issued during the COVID-19 pandemic, plaintiffs failed to establish likelihood of future remote-

schooling orders); *Newspaper Guild of Salem, Local 105 of the Newspaper Guild v. Ottaway Newspapers, Inc.*, 79 F.3d 1273, 1278 (1st Cir. 1996) ("[A] mere speculative possibility of repetition of the challenged conduct cannot avoid application of the mootness doctrine."). With respect to the Supplemental Order, there is no real probability that it will be resurrected given that Ms. Read's trial is now over, resulting in an acquittal on all homicide charges.

To properly invoke this exception, Plaintiffs would have to show that there is a "demonstrated probability" that in one or more hypothetical future cases: (i) a Massachusetts judge issues a buffer zone order; (ii) that hypothetical buffer zone order applies to protests in similar areas within Dedham, Massachusetts; (iii) that Plaintiffs will seek to engage in similar protesting activity; (iv) that such protesting activity is likely to violate the hypothetical future order; and, finally, (v) that Plaintiffs face a credible risk of the Commonwealth enforcing the hypothetical future order against them. The logic is absurd. It "rest[s] on 'speculation' about some future potential event," not the "'reasonable expectation' or 'demonstrated probability'" that is required. *Harris*, 43 F.4th at 195 (collecting cases).

Without any real possibility of reoccurrence, the capable-of-repetition doctrine does not apply to Plaintiffs claims. This matter is moot; federal courts are now without jurisdiction; and this Court should remand with instructions to dismiss. *See ACLU of Mass.*, 705 F.3d at 57.

## II. PLAINTIFFS' CLAIMS ARE CONSTITUTIONALLY BARRED.

### A. The Eleventh Amendment Bars All Claims Against the Trial Court

The Eleventh Amendment bars suits against "arm[s] of the state" in federal court. *Neo Gen Screening, Inc. v. New Eng. Newborn Screening Program*, 187 F.3d 24, 26 (1st Cir. 1999); U.S. CONST. AMEND. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State."). As a jurisdictional bar, Eleventh Amendment arguments may be raised for the first time on appeal, and it applies regardless of the nature of the relief sought. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 677–78 (1974).

Here, the Trial Court is undoubtedly an extension of the Commonwealth. *See Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir. 2002) (concluding that the Massachusetts Trial Court is subject to Eleventh Amendment immunity and there has been no "unequivocal abrogation" for § 1983 claims). Plaintiffs can neither escape this constitutional bar, nor advance any colorable argument that a recognized Eleventh Amendment exception applies to their claims against the Trial Court. *See Cline v. Burke*, 682 F. Supp. 3d 125, 131 (D. Mass. 2023) ("Congress has not abrogated, and Massachusetts has not waived, its Eleventh Amendment immunity for civil rights claims brought under [§ 1983]."). Accordingly, this Court should remand with instructions to dismiss claims against the Trial Court with prejudice.

**B.  The Eleventh Amendment Bars All Claims Against Justice Cannone Because Plaintiffs Request Only Retrospective Relief**

Justice Cannone likewise maintains Eleventh Amendment immunity from suit in federal court.  Although state officials generally do not maintain Eleventh Amendment immunity and may be sued in federal court, *see Ex Parte Young*, 209 U.S. 123, 159–60 (1908), the Government waives sovereign immunity only for suits seeking prospective injunctive relief against state officials.  *See Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002).  This pivotal distinction bars litigants from effecting *post hoc* suits that "would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment."  *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015).

There is no serious argument that Justice Cannone will seek to enforce the Supplemental Order in the future: the Karen Read trial is over and thus the Supplemental Order is no longer in effect.  By its terms, the Supplemental Order no longer regulates any conduct.  Neither does any party "possess an ongoing responsibility" with respect to exercising regulatory authority, *see id*. at 140–41, and thus no exception to sovereign immunity applies.  *See Ex Parte Young*, 209 U.S. at 159–60; *Town of Barnstable*, 786 F.3d at 140–41 ("[S]overeign immunity does not necessarily prevent suits against such state actions when the alleged violation they spur is ongoing and no raid on the state treasury will result.").  Plaintiffs do not argue

that Justice Cannone has any similar "ongoing responsibility" in enforcing the Supplemental Order; in fact, no one does, as there is no operative order left to enforce. The outcome does not change simply because Plaintiffs seek declaratory relief. *See, e.g.*, *Zenon v. Guzman*, No. 3:16-CV-30129-MAP, 2018 WL 324715, at *3 (D. Mass. Jan. 8, 2018), *aff'd*, 924 F.3d 611 (1st Cir. 2019); *Green v. Mansour*, 474 U.S. 64, 73 (1985). On this basis alone, the Court should remand to the district court with instructions to dismiss claims against Justice Cannone with prejudice.

### C. Justice Cannone is Immune from Suit

#### 1. Justice Cannone is immune from all suits because she maintains common law judicial immunity

Justice Cannone is immune from all claims here by virtue of her absolute common law judicial immunity. In this Circuit, "it is an axiom of black letter law that when a judge carries out traditional adjudicatory functions, he or she has absolute immunity for those actions." *Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019); *accord Joubert v. Green,* No. 4:22-CV-40111-IT, 2023 WL 6218127, at *3-4 (D. Mass. Sept. 25, 2023) (dismissing declaratory judgment action against state court judge under judicial immunity). "[A]bsolute judicial immunity means not just immunity from damages, but immunity from suit altogether." *Id*. (citing *Guzman*, 924 F.3d at 617 n.10). A challenged action is judicial where it is a function "normally performed by a judge," and where the parties dealt with the judge "in his or her judicial capacity." *Zenon*, 2018 WL 324715, at *5. So long as Justice

Cannone did not act "in the clear absence of all jurisdiction," she is absolutely immune from suit, even if her actions were taken in *excess* of jurisdiction. *See DuLaurence v. Woodlock*, No. 1:18-CV-11430-JL, 2019 WL 12070290, at *2 (D. Mass. Aug. 6, 2019) (citing *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)), *aff'd*, No. 19-1905, 2021 WL 3776275 (1st Cir. May 21, 2021).

Justice Cannone undoubtedly acted in her judicial capacity when she issued the Supplemental Order. There can be no dispute that courts have the power to issue orders establishing buffer zones, and thus it follows that the judges who issue those orders are acting in their judicial capacity. *See e.g.*, *Schenck v. Pro-Choice Network of W.N.Y.*, 519 U.S. 357, 380–81 (1997). Justice Cannone issued the Supplemental Order to insulate an ongoing criminal trial from outside influence, and Plaintiffs fail to establish that she acted outside of this judicial capacity in issuing the Supplemental Order. Moreover, even if Plaintiffs were correct that the Supplemental Order was overbroad, it would not overcome Justice Cannone's absolute immunity from suit. *See DuLaurence*, No. 18-CV-11430-JL, 2019 WL 12070290, at *2 ("[A] judge will not be deprived of immunity because the action he took was in error … or was in excess of his authority.") (internal quotations omitted). Accordingly, Justice Cannone is absolutely immune from suit here.

### 2. Justice Cannone is immune from this suit under 42 U.S.C. § 1983

Justice Cannone is independently immune from suit under the plain text of 42

U.S.C. § 1983. Claims against her must therefore be dismissed with prejudice. *See* 42 U.S.C. § 1983 ("in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable"). As noted, Justice Cannone indisputably acted in her judicial capacity when she issued the Supplemental Order. *See, e.g.*, *Zenon*, 2018 WL 324715, at *6 (D. Mass. Jan. 8, 2018) (dismissing suit against a superior court justice and finding issuance of a protective order is a "quintessentially 'adjudicative' function"). For this reason, Justice Cannone additionally enjoys statutory immunity under 42 U.S.C. § 1983 from any suit seeking injunctive relief under the circumstances here.

Turning to § 1983's plain language, Plaintiffs do not argue that the Supplemental Order violated a declaratory decree or that declaratory relief was unavailable—in fact, Plaintiffs demanded declaratory relief in their Complaint, which has never been granted. So they clearly cannot seek injunctive relief against Justice Cannone. Turning to the Plaintiffs' request for declaratory relief, *Zenon* forecloses any additional argument on this issue. There, plaintiff sought a declaratory judgment that then-state court Judge Guzman's gag order violated his First and Fourteenth Amendment rights. *See* 2018 WL 324715 at *5. The court held (and this Court affirmed) that Judge Guzman was immune from being a party to a declaratory judgment action so long as she was "performing a quintessentially

'adjudicative' act." *Id.* at *6. Judge Guzman—like Justice Cannone—issuing an order from the bench impacting certain constitutional rights was clearly a judicial act. Plaintiffs here seek identical relief to the plaintiff in *Zenon*, and therefore Plaintiffs' claims against Justice Cannone fail for this additional reason.

### D. The Sweeping Relief Now Sought by Plaintiffs Goes Well Beyond the Relief Sought in the Complaint

In addition to mootness and the Eleventh Amendment bar, this Court should direct that Plaintiffs' appeal be dismissed for a third, independent jurisdictional reason: Plaintiffs' Complaint sought only a "preliminary and permanent injunction enjoining each Defendant from interfering with Plaintiff's right to lawfully engage in constitutionally protected expression and activity within Dedham, Massachusetts." AA011. Therefore, the *only* preliminary relief sought is to enjoin Defendants from interfering with lawful protest. On appeal to this Court, however, Plaintiffs ask for much more sweeping relief: "the entry of an injunction prohibiting all such buffer zone orders and for further proceedings." Br. at 43. In so doing, Plaintiffs change the nature of their case from one seeking to enjoin enforcement of a specific (now-ineffective) order, to one seeking a broad declaration from this Court that any buffer zones are prohibited in the future. Plaintiffs are barred from widening their scope of relief sought. *See Town of Portsmouth v. Lewis*, 813 F.3d 54, 61 (2016) ("[The Court] need not consider a remedy first raised on appeal.") (citation omitted).

## III. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS.

Setting aside the multiple jurisdictional bars to this Court's review, Plaintiffs fall far short of demonstrating a likelihood of success on the merits: the "sine qua non" of the analysis. *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020); *see Arborjet*, 794 U.S. at 173 (Souter, J.) ("If the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.") (citations omitted).

### A. First Amendment Claim

#### 1. The Supplemental Order Is Content Neutral

Contrary to Plaintiffs' argument that the Supplemental Order violates their First Amendment rights, the Supplemental Order is constitutionally sound. The Supplemental Order is content neutral on its face and therefore subject to intermediate scrutiny. *See Ward*, 491 U.S. at 791 (principal inquiry in determining content neutrality is the government's purpose: "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.") (citation omitted); *see also Reed v. Town of Gilbert, Az.*, 576 U.S. 155, 165–66 (2015) (explaining that court will determine whether a regulation is content-based or content-neutral based on the text and purpose of the regulation at issue; the "crucial first step in the content-neutrality analysis" is determining whether the regulation is content neutral on its

face).[6]  Intermediate scrutiny likewise applies to facial challenges to content-neutral regulations concerning a traditional or designated public forum.  *See, e.g.*, *Cutting v. City of Portland, Me.*, 802 F.3d 79, 84 (1st Cir. 2015); *Globe Newspaper Co. v. Beacon Hill Architectural Com'n*, 100 F.3d 175, 182 (1st Cir. 1996).

Here, the Supplemental Order does not regulate speech based on its content; rather, the Supplemental Order prohibits speech that is "intended to interfere with the administration of justice or [is] intended to influence" parties to the proceedings. AA336–337.  In contrast to the district court's conclusion that the Supplemental Order requires "enforcement authorities to examine the content of the message that is conveyed to determine whether a violation occurred," ADD011 (quoting *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (cleaned up)), the Supplemental Order does not require the examination of protesters' messages.  Rather, enforcement authorities could have determined that a protestor "intend[s] to interfere with the administration of justice" irrespective of the message that the protestor chooses to broadcast in front of the courthouse by examining the protestors' expressive conduct or the impact of their speech on trial participants.

Plaintiffs attempt to shoehorn the Supplemental Order into the content-based

---

[6] Even assuming that the court were to consider the Supplemental Order content based, and therefore subject to strict scrutiny, the Supplemental Order passes muster. To survive strict scrutiny, a limitation on speech must serve a compelling interest of the state and be narrowly tailored to promote that interest.  *Reed*, 576 U.S. at 163. The Supplemental Order qualifies as such a limitation.

category by asserting that only those protesters who had messages regarding the Read trial were acted upon.  Br. at 36.  But that argument fails to address the Supplemental Order's plain language.  By its terms, the Supplemental Order's purpose is to ensure that Ms. Read received a constitutionally sound trial, free from distraction and irritation from protestors outside the Courthouse, and to ensure the "orderly administration of justice."  AA336–37.  Therefore, the Supplemental Order is content-neutral and subject to intermediate scrutiny.

A content-neutral regulation still must be "narrowly tailored to serve a significant government interest, and … leave[] open ample alternative channels" to survive constitutional muster.  *Cutting*, 802 F.3d at 84 (internal quotations omitted).  And unlike regulation based on content or viewpoint, the restraint in the instant case need not "be the least restrictive or least intrusive means of serving the government's interest."  *Coakley*, 573 U.S. at 486.  The Supplemental Order is content-neutral, and it satisfies these additional requirements as well.

### 2. The Commonwealth Has a Significant Interest In Protecting a Criminal Defendant's Right to a Fair Trial.

There can be no serious dispute that the Commonwealth has a significant interest in protecting a criminal defendant's Sixth Amendment rights.  *See Underwood*, 358 Mass. at 511, 265 N.E.2d at 582.  Preserving this interest makes sense: "No right ranks higher than the right of the accused to a fair trial," and courts consistently find that the administration of justice is a compelling interest.  *Press-*

*Enterprise Co. v. Superior Court,* 464 U.S. 501, 508 (1984); *see also Cox v. State of La.*, 379 U.S. 559, 562 (1965) ("There can be no question that a State has a legitimate interest in protecting its judicial system from the pressures which picketing near a courthouse might create."); *United States v. Trump*, 88 F.4th 990, 1016 (D.C. Cir. 2023) (balancing the defendant's right to a fair trial with the right to free speech); *Picard*, 42 F.4th at 104 ("The State would clearly have a compelling interest, for example, in prohibiting protests outside a courthouse featuring amplified calls for the jurors to reach a particular verdict in an ongoing trial in that courthouse that are audible inside the courtroom."). The Commonwealth is therefore free to "'adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence.'" *O'Neil v. Canton Police Dep't.*, 761 F. Supp. 3d 299, 307 (D. Mass. 2024) (quoting *Cox*, 379 U.S. at 562).

Plaintiffs argue that the "[t]here is no compelling interest in restricting a citizen from publicly and peacefully demonstrating against a judge or a prosecutor," Br. at 32, but this mischaracterizes the Commonwealth's interest at issue. *See, e.g.*, *Cox*, 379 U.S. at 562; *Picard*, 42 F.4th at 104. In *Cox*, a defendant was convicted under a Louisiana statute that criminalized picketing near courthouses with the intent to interfere, obstruct, or impede the administration of justice.[7] 379 U.S. at 560. The

---

[7] The statute at issue provided, in full: "Whoever, with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court office, in the discharge of his duty

Court held that the statute did not facially violate the First Amendment because it struck an appropriate balance between the State's compelling interest in ensuring the orderly administration of justice and individuals' right to picket. *Id.* at 574. In so holding, the Court concluded that the statute was narrowly tailored to address the State's interest because it was not so broad in scope "as to stifle First Amendment freedoms." *Id.* As in *Cox*, the Commonwealth's interest here was to ensure the fair administration of justice during a criminal trial. AA032–34; *see* 379 U.S. at 562–64. Indeed, it is the responsibility of the trial court to ensure that proceedings are conducted "fairly, efficiently, and respectfully." *Wong v. Liu*, 472 Mass. 208, 219, 34 N.E.3d 35, 45 (2015) (discussing the inherent powers of the trial court in relation to a sanction). Justice Cannone was explicitly concerned with the "orderly administration of justice" and ensuring that "any trial participants" are free from external influence. AA032-34. This included the defendant and jurors, to be sure, but also witnesses, staff, and other crucial participants in the trial who were impacted by the protestors during the trial. In issuing the Supplemental Order, Justice Cannone necessarily and demonstrably considered these factors and acted accordingly. AA032–34; AA387–88 (Supplemental Order).

---

pickets or parades in or near a building housing a court of the State of Louisiana shall be fined not more than five thousand dollars or imprisoned not more than one year, or both." *Cox*, 379 U.S. at 560.

### 3.     The Supplemental Order Is Narrowly Tailored

In addition to asserting a "significant interest," a content-neutral regulation must be "narrowly tailored" to serve that interest. *Rideout*, 838 F.3d at 71. Indeed, the "narrow tailoring doctrine … requires only that a challenged speech restriction not burden substantially more speech than is necessary to further the government's interest." *Cutting*, 802 F.3d at 86. The Supplemental Order is narrowly tailored for three reasons. *First*, Justice Cannone considered alternative measures before issuing the Supplemental Order. *Second*, the Supplemental Order did not restrict speech any more than necessary to protect Ms. Read's constitutional rights. *Finally*, the Supplemental Order leaves open alternative channels for expression. Taken together, these measures confirm that the district court got it right: The Supplemental Order is narrowly tailored, and Plaintiffs accordingly are unlikely to succeed on the merits of their First Amendment challenge.

### (i)     Justice Cannone considered alternative measures prior to issuing the Supplemental Order

Justice Cannone satisfied her obligation to consider alternatives before issuing the Supplemental Order. *See Casey v. City of Newport*, 308 F.3d 106, 113–14 (1st Cir. 2002). Ignoring the record, Plaintiffs contend that Justice Cannone did not "consider[] *any* alternative measures before creating the buffer zone injunction." Br. at 36 (emphasis in original). The record shows otherwise: specifically, Justice Cannone expressly considered the less restrictive alternative of the 2024 Buffer Zone

Order from the first trial and found it insufficient to protect the jury from unwarranted interference and, by extension, the defendant's right to a fair trial. ADD032–34. Justice Cannone concluded that, "[t]o ensure a fair trial with an impartial jury, extending the buffer zone is necessary to prevent jurors from outside influence and to prevent interruptions and distractions during trial." ADD033–034.

Plaintiffs wrongly argue that the buffer zone "sweeps more broadly than necessary to promote the government's interest," but this argument is contradicted by the record and controlling law. Br. at 10. Narrowly tailoring a restriction on speech does not require the Commonwealth to choose the "least restrictive means possible." *Naser Jewelers, Inc. v. City of Concord, NH*, 513 F.3d 27, 34-35 (1st Cir. 2008). And just because a court could conclude that "the government's interest could be adequately served by some less-speech-restrictive alternative," does not require the court to invalidate the regulation. *Id.* at 35.

Justice Cannone, consistent with *City of Newport*, considered whether a 200-foot buffer zone was overbroad before issuing the Supplemental Order. AA098; *see* 308 F.3d at 114–15. In weighing the appropriate remedy to ensure "the administration of justice," Justice Cannone rejected a 500-foot buffer zone prior to Ms. Read's first trial. Then, prior to Ms. Read's *second trial,* and based on Justice Cannone's experience during the first trial, Justice Cannone correctly recognized that the prophylactic measures from the first trial were insufficient to limit outside

influence.  For example, Justice Cannone noted the massive public attention and demonstrations that preceded the first trial also continued *during* the trial: "Despite the 200-foot buffer zone around the courthouse complex during [Ms. Read's *first trial*], on the western side of the courthouse complex where there is a large open space … the collective voices of groups of demonstrators gathering outside the buffer zone could be clearly heard inside the courthouse."  AA033.

Justice Cannone also relied on affidavits of a juror[8] and a Massachusetts State Police Sergeant who each noted substantial disruption and harassment during Ms. Read's first trial.  *See* AA120; AA125.  Therefore, based on experience from the first trial, factual development from affidavits, and her review of the controlling law, Justice Cannone satisfied the requirement to consider alternatives before issuing the

---

[8] Plaintiffs intimate that Justice Cannone relied on this affidavit from "[her] hand-selected jury foreman" as "pretext" to craft the buffer zone order.  Br. at 20. Plaintiffs' allusion to some alleged misconduct is as baseless as it is illogical.  *First*, Justice Cannone issued the 2024 Buffer Zone Order without any "pretextual" support.  *Second*, Massachusetts law requires the judge to pick the foreperson, *Commonwealth v. Campbell*, 394 Mass. 77, 83–84, 474 N.E.2d 1062, 1067 (1985). *Third*, nothing in the affidavit states that the unnamed juror was the foreman. *Finally*, the anonymous affidavit was submitted in support of the juror's motion to extend an impoundment order protecting the jurors' names after the first trial, citing the extensive harassment which the jurors suffered throughout their service. References to the noise in the courtroom were in an ancillary paragraph of an otherwise troubling revelation that informed Justice Cannone's conclusion as to the necessity of the buffer zone.

Supplemental Order.[9]

> **(ii)** **The Supplemental Order did not burden more speech than necessary to safeguard Ms. Read's right to a fair trial**

Regardless of the alternatives considered, Plaintiffs additionally complain that the Supplemental Order still burdened substantially more speech than necessary because: (1) a buffer zone was unnecessary, as Justice Cannone could have implemented narrower alternatives to the Supplemental Order, including by enforcing existing criminal statutes, Br. at 25; and (2) the physical scope of the Supplemental Order was broader than necessary, Br. at 10. Neither contention is persuasive.

Before Ms. Read's first trial, Justice Cannone reasonably determined that "some restricted zone," *Burson*, 504 U.S. at 208, was necessary to ensure Ms. Read's right to an impartial trial. AA032–34. As Justice Cannone noted, however, the buffer zone from the first trial failed to fully achieve the Commonwealth's interest because trial participants could "clearly" hear the demonstrators "screaming and yelling" inside the courtroom and because jurors experienced "harassment," and

---

[9] To the extent that Plaintiffs argue that the District Court "abandoned its fact finding role" by deferring to Justice Cannone's findings, Br. at 10, 23, or assert that Justice Cannone was required to hold an evidentiary hearing before issuing the Supplemental Order, Plaintiffs provide no legal support for either assertion. In contrast, as the district court recognized, it is the trial court (issuing the Supplemental Order) which is in the best position to make "on-the-spot judgments." *Chen v. Holder*, 703 F.3d 17, 24 (1st Cir. 2012).

"hostility throughout the trial." AA033–34; AA121; AA125. Accordingly, before Ms. Read's second trial, Justice Cannone determined that slightly expanding the buffer zone to the areas covered by the Supplemental Order was the only "available, *effective*" alternative that would achieve the Government's interest. *Ashcroft v. Am. Civ. Liberties Union*, 542 U.S. 656, 666 (2004) (emphasis added); *see* AA032–34; AA336–37. The Supplemental Order was therefore necessary to "account for these areas that were problematic throughout the first trial," which previously were outside the buffer zone. AA0121; *cf. Ward*, 491 U.S. at 799 (explaining that such restrictions are impermissible where a "substantial portion of the burden on speech does not serve to advance its goals").

Plaintiffs' argument that misdemeanor crowd control statutes could have fully achieved the Commonwealth's interest is both factually and legally misplaced. Br. at 25. It is legally erroneous because the law does not require that there be no other hypothetical option that the Commonwealth could have chosen. Rather, the test is whether the restriction at issue—here, the Supplemental Order—"promotes a substantial government interest that would be achieved less effectively absent the regulation." *Naser Jewelers*, 513 F.3d at 34. Moreover, Justice Cannone concluded that misdemeanor crowd control statutes failed to sufficiently protect the "administration of justice" from outside influence based on the experience of jurors, law enforcement, and herself in the first trial. *See* AA032–34; AA121; AA125. As

in *Burson*, even if enforcing existing statutes could arguably achieve the Commonwealth's compelling interest, the buffer zone would still be "necessary" to achieve an orderly administration of justice. *See* 504 U.S. at 207–08. Plaintiffs' argument is also factually wrong because Justice Cannone cannot herself enforce criminal statutes against specific citizens. *Contra* Br. at 24 ("she could simply allow enforcement of Mass. Gen. Laws ch. 268 §§ 13A & 13B"); *id.* at 37 (same).

Equally conclusory is Plaintiffs' assertion that, because a buffer zone was not issued in different high-profile trials, like *United States v. Tsarnaev*, it was unnecessary in Ms. Read's trials. Br. at 38, 41. In *Tsarnaev*, the district court (*O'Toole*, J.), rejected the defense's request for a buffer zone and stated that he preferred to "watch it" and see whether issues arose involving demonstrations. *United States v. Tsarnaev*, No. 13-cv-10200, ECF No. 988, at 81 (D. Mass. Dec. 30, 2014). No evidence suggests that the *Tsarnaev* trial was disrupted by "protesting and screaming," "[v]ehicles honking their horns in response to signs and gestures from … demonstrators," or rampant juror harassment. *See* AA033; AA120; AA125. Thus, both the scale of demonstrations and the Norfolk Superior Courthouse's physical features—a historic building with large windows and an open western expanse—made a buffer zone more critical than at the Moakley Courthouse, which has windowless courtrooms situated in the rear of the building and is therefore insulated from noise.

Finally, Plaintiffs' remaining armchair proposals—soundproofing the courthouse or "closing the windows" in an unairconditioned courtroom in June—are precisely the sort of unsupported proposals that the First Amendment does not require. *See* Br. 17. The Court need not consider every niche suggestion. Instead, "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest … the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward*, 491 U.S. at 800. Such is the case here, and a buffer zone was necessary to fully achieve the Commonwealth's interest.

### (iii) The mens rea requirement narrowly tailored the Supplemental Order

In contrast to *Grant I*, where Plaintiffs "point[ed] principally to the [lack of a] mens rea requirement" to support their broadness argument, here the Supplemental Order included one and only restricted expression "intended to influence" the administration of justice. AA0336–37; *Grant*, 137 F.4th at 5. Courts routinely conclude that a restriction that includes a mens rea requirement is more likely to be narrowly tailored. *See, e.g.*, *Grant*, 137 F.4th at 6; *Trump*, 88 F.4th at 1026 ("adding a mens rea requirement will appropriately balance the court's institutional interests and the free speech values at stake"). Here, by including a mens rea requirement, Justice Cannone eliminated the risk that the Supplemental Order applied "equally to

speech directed toward random passersby and speech directed toward trial participants." *Grant*, 137 F.4th at 5. Like the statute in *Cox*, the Supplemental Order is narrowly tailored to address only speech "intended to influence the administration of justice," and thus it burdened *only* speech necessary to achieve its compelling interest. *See Cox*, 379 U.S. at 565; *see also Ward*, 491 U.S. at 799. Plaintiffs cite no contradictory law or evidence to demonstrate that the mens rea requirement fails to narrowly tailor the Supplemental Order to achieve the "significant governmental interest." *See Naser Jewelers*, 513 F.3d at 31.

Rather, Plaintiffs raise three new concerns, none of which withstands scrutiny. *First*, Plaintiffs argue—without explanation—that the mens rea requirement was "ephemeral" and "insufficient." Br. at 11, 23; *see Grant*, 137 F.4th at 5. Plaintiffs argue that the district court "eviscerated the mens rea requirement" by listing examples of messages that would potentially violate the Supplemental Order, but these anecdotes have no bearing on the narrowly tailored analysis. Br. 31–32; ADD018. The mens rea requirement limited the scope of the Supplemental Order to comply with this Court's previous instruction and with the permissible restriction in *Cox*. *See Cox*, 379 U.S. at 562–64; *Grant*, 137 F.4th at 6.

*Second*, Plaintiffs point to the size of the buffer zone at issue, but the mere area of a buffer zone is not dispositive of its constitutionality; rather, a court must determine whether the burden on speech is narrowly tailored to achieve the

significant governmental interest.  *Burson*, 504 U.S. at 210.  In *Burson*, the Court upheld a 100-foot buffer zone around polling places.  The Tennessee law at issue survived strict scrutiny not because of the distance *per se*, but because the State has a compelling interest in ensuring that people casting a ballot in an election are "free from the taint of intimidation and fraud."  Even though such restrictions impinge, to some degree, on others' First Amendments rights, the buffer zone at issue was "necessary to protect" the fundamental right of voting and constituted a constitutional compromise.  *Burson*, 504 U.S. at 209–11; *Frank v. Lee*, 84 F.4th 1119, 1145–46 (10th Cir. 2023) (citing *Burson* and upholding 300-foot buffer zone around polling site), *cert. denied*, 144 S. Ct. 1349 (2024).

Like the statutes at issue in *Burson* and in *Cox*, which were upheld under strict scrutiny, the buffer zone here was a similarly narrow, "minor geographic limitation," which balanced individuals' (including Plaintiffs') interests in protesting "where the action is," Br. at 39, against Ms. Read's right to a fair trial by targeting only the areas from which the "interruptions" occurred during Ms. *Read's* first trial.  *See Burson*, 504 U.S. at 210.

*Third*, Plaintiffs mistakenly rely on *Coakley* to support their contention that the buffer zone was physically overbroad.  *See* Br. at 35.  In *Coakley*, the Court ruled that a 35-foot buffer zone around sidewalks surrounding abortion clinics in Massachusetts was not narrowly tailored.  573 U.S. at 486.  The Court relied in part

on the physical distance of the buffer zone but further found that the challenged buffer zone was overbroad because it "compromise[d] petitioners' ability to initiate the close, personal conversations that they view as essential to 'sidewalk counseling.'" *Id.* at 487. Yet, both the petitioners' and the Government's interests in *Coakley* were entirely different than the parties' respective interests here. In *Coakley*, "[p]etitioners [were] not protestors," and "sidewalk counseling" is entirely unlike the interests that the government sought to protect in the *Read* trials. *Id.* at 489. Indeed, a 35-foot buffer zone in Ms. Read's first trial would be useless to ameliorate jurors "hear[ing] the protestors outside screaming and yelling." AA125. More like the restrictions in *Burson* and *Cox*, the Supplemental Order was broad enough to secure Ms. Read's right to an impartial trial but did not burden substantially more speech than necessary. *Burson*, 504 U.S. at 210; *Cox*, 379 U.S. at 562–64.

### (iv) The Supplemental Order left open alternative channels for expression

Finally, by including a mens rea requirement, the Supplemental Order left open to Plaintiffs alternative channels for lawful expression. AA032–33; *see Naser Jewelers*, 513 F.3d at 37 ("[T]he fact that restrictions prohibit a form of speech attractive to [Plaintiffs] does not mean that no reasonable alternative channels of communication are available."). Plaintiffs could still demonstrate "where the audience is," Br. at 39, with a "focus on the courthouse," Br. at 41, so long as they

did not intend to interfere with the administration of justice. *Naser Jewelers*, 513 F.3d at 37. Plaintiffs were also free to comment on Ms. Read's innocence, the veracity of witnesses, or Justice Cannone outside the buffer zone, on social media, or to the press. Unlike the restrictions in *Coakley*, the Supplemental Order did not foreclose Plaintiffs' demonstrations and instead left open alternative channels for speech. 573 U.S. at 488–89.

## B. Plaintiffs Are Not Likely to Succeed on the Merits of Their Due Process Claim

The district court correctly recognized that Plaintiffs are unlikely to succeed on their Fourteenth Amendment due process claim. *See Grant v. Trial Ct. of Mass*, 2025 WL 1147752 at *3. Plaintiffs appear to raise three arguments supporting their due process claim: (1) Justice Cannone had "no jurisdiction" to issue buffer zone orders over Plaintiffs, Br. at 11, 15–19; (2) Plaintiffs had no meaningful opportunity to contest the buffer zone orders, Br. at 19–20; and (3) the Supplemental Order amounts to "a vague, unconstitutional regulation." Br. at 20–22. All three arguments fail: Justice Cannone acted within her authority in issuing the Supplemental Order; Plaintiffs *did* have a meaningful opportunity to contest the Supplemental Order—in fact, Plaintiff Grant availed himself of this remedy; and, finally, the Supplemental Order is not unconstitutionally vague. There is no error.

### 1. Massachusetts Courts Have Inherent Authority to Take Actions Necessary to Ensure Fair Criminal Trials

Justice Cannone exercised her inherent judicial powers in issuing the Supplemental Order, and Plaintiffs offer no meaningful argument to the contrary. In Massachusetts, a judge's inherent authority "is essential to the function of the judicial department, to the maintenance of its authority, and to its capacity to decide cases." *First Just. of Bristol Div. of Juvenile Court Dep't. v. Clerk-Magistrate of Bristol Div. of Juvenile Court Dep't.*, 438 Mass. 387, 397, 780 N.E.2d 908, 916 (2003) (cleaned up). "Inherent judicial authority is 'not limited to adjudication, but includes certain ancillary functions such as rule-making and judicial administration, which are essential if the courts are to carry out their constitutional mandate.'" *Id.* (quoting *O'Coin's, Inc. v. Treasurer of the Cnty. of Worcester*, 362 Mass. 507, 510, 287 N.E.2d 608 (1972)). Such inherent authority includes the power "to control [a court's] own proceedings … and the environment of the court." *Chief Admin. Just. of the Trial Court v. Lab. Rels. Comm'n*, 404 Mass. 53, 57, 533 N.E.2d 1313, 1317 (1989) (quoting *State v. LaFrance*, 124 N.H. 171, 179-180, 471 A.2d 340 (1983)).

The SJC recognizes that "extraordinary fact patterns," similar to Ms. Read's high-profile case, "may require courts to exercise their 'inherent authority' to ensure fair trials, promulgate rules, and administer the courts." *Matter of Impounded Case*, 491 Mass. 109, 119–20, 199 N.E.3d 435 (2022); *see also Crocker v. Justs. of Superior Ct.*, 208 Mass. 162, 178–79, 94 N.E. 369 (1911) (recognizing the

importance of a defendant's right to an impartial jury and explaining that Massachusetts courts have the authority "to do within reason *all that the conditions of society and human nature permit* to provide an unprejudiced panel for a jury trial.") (emphasis added). Put simply, Justice Cannone acted well within her authority when issuing the Supplemental Order, particularly given the evidence presented to Justice Cannone prior to Ms. Read's second trial showing why the Supplemental Order was necessary. AA032–34; AA336–37.

Plaintiffs seemingly argue that the Justice Cannone lacked "jurisdiction" to regulate their conduct because they were not afforded adequate notice of the buffer zone. Br. at 15–17. But, by its own terms, the Supplemental Order applied only within 200-feet of the courthouse complex and prohibited certain protesting activity therein; it did not apply to the "windows of the Envoy Hotel" or "protestors on Seaport Boulevard." Br. at 17. The Supplemental Order was a reasonable time, place, and manner restriction, and Plaintiffs do not offer any meaningful argument as to why the superior court would lack personal jurisdiction over *anyone* who violated it, much less Plaintiffs themselves.

To the extent Plaintiffs argue that Justice Cannone did not have jurisdiction to issue the Supplemental Order's restriction on a "public forum (sidewalks)," their argument is misplaced. Br. at 18. Not *all* sidewalks are traditional public forums. *See United States v. Kokinda*, 497 U.S. 720, 727 (1990). Indeed, the particular

characteristics of the space in question are highly relevant to the inquiry. *Verlo v. Martinez*, 820 F.3d 1113, 1139 (10th Cir. 2016). "The mere fact a sidewalk abuts a courthouse or its grounds is not determinative of the forum status of the sidewalk." *Id.* Justice Cannone acted within her authority in issuing the Supplemental Order, and Plaintiffs' arguments to the contrary are without merit.

### 2. Plaintiffs Had Ample Notice and Opportunity to be Heard—Indeed, One Was Heard

Plaintiffs' second due process argument is based on the fiction that they did not have sufficient notice or an opportunity to be heard with respect to their challenges to the Buffer Zone Orders. As a threshold matter, Plaintiffs fail to establish that they had an individual right to be heard in the first place. The Due Process Clause cannot be used to challenge rules of general applicability. *See, e.g., O'Neil v. Town of Nantucket*, 711 F.2d 469, 472 (1st Cir. 1983) ("[P]rocedural due process has not been held to require that the affected individuals or groups be granted a hearing before government acts in a legislative, or broadly rule-making or policy-forming, capacity.") (quoting Tribe, *American Constitutional Law* (1978), p. 514) (cleaned up); *see also Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("The Constitution does not require all public acts to be done in town meeting or an assembly of the whole."). To be sure, any individual plaintiff would have a right to be heard before (or shortly after) they are subject to an individual sanction for violating the order, as Plaintiff Grant's petition demonstrated.

AA406.  But that does not mean individuals have a due process right to participate in developing a rule of general applicability like a buffer zone order.

Moreover, Plaintiffs' argument is belied by the record: specifically, Justice Cannone held a *public* hearing on the Commonwealth's motion for a Buffer Zone Order before Ms. Read's second trial.[10]  Other members of the public submitted concerns to the superior court, along with the American Civil Liberties Union ("ACLU") as an *amicus curiae*, which Justice Cannone explicitly considered.  *See* AA077.  As a practical matter, Plaintiffs had actual notice of the Supplemental Order at issue, as it flowed directly from their own litigation (and not withstanding Plaintiffs' apparent interest in Ms. Read's case).  *See Grant I*, 137 F.4th at 5 ("Of course, the state court could, entirely of its own volition, further simplify any potential First Amendment issues by amending the Order to introduce a mens rea requirement"); *see also* Br. at 6–8 (noting Plaintiffs have purportedly protested near the Norfolk County Courthouse since November 2024).

Plaintiffs instead complain that Justice Cannone merely "slammed the courthouse door shut on anyone who wanted to intervene," Br. at 20, but this is factually incorrect.  *See Spicuzza*, 494 Mass. at 1009, 232 N.E.3d at 148 (noting no abuse of discretion in denying protestors' motion to intervene in Ms. Read's case);

---

[10] Court TV, LIVE: MA v Karen Read Murder Retrial, Motions Hearing Day 2, https://www.youtube.com/watch?v=yIhOMpltXE8 at 1:10:44 (last accessed on Nov. 21, 2025).

*Republican Co. v. Appeals Court*, 442 Mass. 218, 227 n.14, 812 N.E.2d 887 (2004). Plaintiffs then brush aside credible evidence that the noise generated by protestors during Ms. Read's first trial—that is, before her case garnered even *more* attention— disrupted juror deliberations. *See* Br. at 20; *see also* AA033–34 (crediting affidavit that jurors could hear protestors outside "screaming and yelling.").

Plaintiffs next feign that they lacked a meaningful opportunity to challenge the Supplemental Order, even though Plaintiff Grant, in fact, availed himself of the remedy established by the Supplemental Order by requesting review by a Massachusetts superior court justice. AA406. Moreover, *Spicuzza* illustrates that the Plaintiffs could have petitioned a SJC single justice for relief. 494 Mass. at 1007, 232 N.E.3d at 148. Plaintiffs chose not to avail themselves of this additional avenue to their requested relief.

As a factual matter, Plaintiffs had ample notice and opportunity to raise their arguments against the Supplemental Order at issue, and, as a legal matter, such notice and opportunity were constitutionally sufficient. The district court thus correctly recognized that Plaintiffs are unlikely to succeed on their due process claim, and this Court should affirm for the same reasons.

### 3. The Supplemental Order Is Not Vague

Plaintiffs' final due process challenge—that the Supplemental Order is unconstitutionally vague—collapses under well-settled vagueness principles. Br. at

20–22.  This Court has instructed that "[a] statute is impermissibly vague for lack of notice only if it prohibits … an act in terms so uncertain that persons of average intelligence would have no choice but to guess at its meaning and modes of application."  *Frese v. Formella*, 53 F.4th 1, 10 (1st Cir. 2022) (cleaned up).  To be sure, "[t]he mere fact that a regulation requires interpretation does not make it vague."  *Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 93 (1st Cir. 2004).  The challenged law "must only delineate its reach in words of common understanding."  *Frese*, 53 F.4th at 11 (cleaned up).

The Supplemental Order provides clear notice to the average person regarding prohibited conduct within the buffer zone: this is constitutionally sufficient.  As the district court observed, "the Supplemental Order provides clear notice regarding what it means 'to interfere with the administration of justice or [to intend] to influence any judge, juror, witness or court officer … within the buffer zone.'"  ADD015–16.  The district court correctly noted that "[a] person of average intelligence would not have to guess what it means to interfere with the administration of justice or to intend to influence a judge, juror, witness, or court officer."  *Id.* at 16; *see also O'Neil*, 761 F. Supp. 3d at 309 (finding, in relevant part, Mass. Gen. L. ch. 268, § 13A—which contains language substantially similar to that of the Supplemental Order—is not unconstitutionally vague).

Plaintiffs do not address the merits of the district court's analysis; they only

attack its conclusion. *See* Br. at 21–22. They (wrongly) assert that "[g]overnment regulations which rely on a viewer's subjective interpretation of facts are void for vagueness," Br. at 21, citing two inapposite cases concerning distinguishable statutes, and failing to reconcile the substantial authority that illustrates why the plain language of the Supplemental Order passes constitutional muster. *See, e.g.*, *Frese*, 53 F.4th at 11–12 (concluding statute concerning prosecuting defamation was not vague because "we do [not] think a reasonable person has much difficulty in ascertaining whether speech subjects a living person to public hatred, contempt, or ridicule"); *Hill v. Colorado*, 530 U.S. 703, 732–33 (finding that a statute that prohibited "knowingly approach[ing]" a person to "engag[e] in oral protest, education, or counseling with [that] person" provided adequate notice). The Supplemental Order is constitutionally sound, and this Court should reject Plaintiffs' undeveloped, conclusory arguments to the contrary.

## IV. PLAINTIFFS CANNOT SATISFY ANY OF THE REMAINING PRELIMINARY INJUNCTION FACTORS.

Plaintiffs cannot show a likelihood of success on the merits of their constitutional arguments, and thus they are not entitled to preliminary injunctive relief. *See Arborjet*, 794 F.3d at 173 (Souter, J.). Even if they could, however, Plaintiffs fail to establish that the remaining preliminary injunction factors weigh in their favor.

## A.     Plaintiffs Cannot Show Irreparable Harm

Plaintiffs' attempt to articulate irreparable harm is no stronger than their one-sentence assertion of it.  *See* Br. at 42.[11]  They argue, and the district court agreed, that "[t]he 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'"  *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also* ADD019.  But the Supplemental Order is no longer in effect, and Plaintiffs do not—and cannot—explain how they continue to be harmed.  And because there is no First Amendment violation, it is a matter of fiction to suggest that the Supplemental Order irreparably harms Plaintiffs.

Even if the Plaintiffs could clear these hurdles, they still fail to demonstrate that they will suffer irreparable harm without an injunction.  The district court's presumption of irreparable harm was sensible on May 28 because the Read trial was ongoing.  *See* ADD019.  But Plaintiffs do not—and cannot—explain how this Court's decision will alter their rights at this point: regardless of this Court's decision, there will still be no buffer zone and therefore no ongoing loss of First Amendment freedoms.  In the event this case is somehow permitted to proceed, Plaintiffs' First Amendment rights will be unaffected as they litigate through trial.  *Cf. Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (basis for injunctive

---

[11] In what appears to be a remnant of their prior appellate brief in this matter, Plaintiffs wrongly claim that the district court "did not assess the remaining factors once it determined likelihood of success."  Br. at 42 n.10; *see also* ADD019–020.

relief in the federal courts "has always been irreparable injury and the inadequacy of legal remedies.") (collecting cases).

## B.    There Are No Hardships Left to Balance

For the same reasons, Plaintiffs fail to establish that the balance of hardships tips in their favor. They claim that "[f]ailing to grant the injunction will continue to deprive [Plaintiffs], and the public, of their constitutional rights. … [and] [a]n injunction will merely restore the rights Appellants are guaranteed by the U.S. Constitution." Br. at 42. But in the absence of an operative buffer zone order, and with no reasonable likelihood of reoccurrence, Plaintiffs again fail to explain how there is *any* ongoing hardship that can be remedied by an injunction.

## C.    The Public Has No Interest in An Expired Order

Plaintiffs advance similarly conclusory arguments in support of the final preliminary injunction factor. They argue that issuance of an injunction is in the public interest because "[m]embers of the public are prohibited from speaking … [and] members of the public have a right to hear [Plaintiffs'] protests." Br. at 43. Again, however, the Supplemental Order is no longer in effect and therefore does not regulate *anything* (speech or conduct); it is a nullity. The public has no interest in an injunction against an inoperative court order.

## CONCLUSION

For the foregoing reasons, the Court should remand this case with instructions to dismiss for lack of jurisdiction.  Alternatively, should the Court reach the merits, the Court should affirm the district court's order denying Plaintiffs' request for a preliminary injunction against the Trial Court and Justice Cannone.


Dated: November 21, 2025        Respectfully submitted,

Andrea Joy Campbell
*Attorney General*

*/s/ Robert A. Fisher*
Robert A. Fisher, 1st Cir. No. 121676
*Special Assistant Attorney General*
Nixon Peabody LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109
(617) 345-1000
rfisher@nixonpeabody.com

## Certificate of Compliance with Rule 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 11,556 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), according to the Microsoft Word word-processing system used to prepare the brief.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Robert A. Fisher*
Robert A. Fisher

## Certificate Of Service

I hereby certify that this document, filed through the Electronic Case Filing system on November 21, 2025, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Robert A. Fisher*
Robert A. Fisher