*In the*

# UNITED STATES COURT OF APPEALS
*for the*
# FIRST CIRCUIT

JASON GRANT, ALLISON TAGGART, LISA PETERSON,

AND SAMANTHA LYONS,

*Plaintiffs-Appellants,*

v.

TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS; BEVERLY J. CANNONE, IN THE OFFICIAL CAPACITY AS JUSTICE OF THE SUPERIOR COURT; GEOFFREY D. NOBLE, AS SUPERINTENDENT OF THE MASSACHUSETTS STATE POLICE; MASSACHUSETTS; MICHAEL W. MORRISSEY, IN THE OFFICIAL CAPACITY AS THE NORFOLK COUNTY DISTRICT ATTORNEY,

*Defendants-Appellees,*

MICHAEL D'ENTREMONT, IN THE OFFICIAL CAPACITY AS CHIEF OF THE POLICE DEPARTMENT OF THE TOWN OF DEDHAM,

*Defendant.*

*On Appeal from the United States District Court*
*for the District of Massachusetts*
*No. 1:25-cv-10770-MJJ*
*The Honorable Myong J. Joun*

## APPELLANTS' REPLY BRIEF

<table>
<tr><td>Marc J. Randazza</td><td>Mark Trammell</td></tr>
<tr><td>Jay M. Wolman</td><td>CENTER FOR AMERICAN LIBERTY</td></tr>
<tr><td>RANDAZZA LEGAL GROUP, PLLC</td><td>P.O. Box 200942</td></tr>
<tr><td>30 Western Avenue</td><td>Pittsburgh, PA 15251</td></tr>
<tr><td>Gloucester, MA 01930</td><td>Tel: (703) 687-6200</td></tr>
<tr><td>Tel: (888) 887-1776</td><td>MTrammell@libertyCenter.org</td></tr>
<tr><td>ecf@randazza.com</td><td></td></tr>
</table>

*Attorneys for Plaintiffs-Appellants*

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................1

    1.0    Injunctive Relief is Not Moot ..........................................................1

    2.0    Appellee Cannone is Not Immune.................................................3

    3.0    The Buffer Zone Violates the First Amendment ..........................7

    4.0    Appellants were Denied Due Process...........................................13

    5.0    The Remaining Factors Warrant Injunctive Relief......................17

CONCLUSION .............................................................................................19

CERTIFICATE OF COMPLIANCE ...........................................................20

CERTIFICATE OF SERVICE......................................................................21

**CASES**

*3137, LLC v. Town of Harwich,*
126 F.4th 1 (1st Cir. 2025) ................................................................................16

*Abrams v. United States,*
250 U.S. 616 (1919) ..........................................................................................14

*Chase Nat'l Bank v. Norwalk,*
291 U.S. 431 (1934) ..........................................................................................15

*Chief Admin. Just. of the Trial Court v. Lab. Rels. Comm'n,*
404 Mass. 53 (1989) ..........................................................................................14

*Commonwealth v. Czerkawski,*
Case No. NOCR2103-1094 (Norfolk. Sup. Ct. Mar. 16, 2018) ..........................3

*Commonwealth v. Read,*
Case No. 2282CR0117 (Norfolk, Mass. Apr. 4, 2024) ......................................16

*Commonwealth. v. Lopes,*
Case No. 1882CR00309 (Norfolk Sup. Ct. filed Jan. 31, 2023) ..........................3

*Cox v. State of La.,*
379 U.S. 559 (1965) ............................................................................................9

*Crocker v. Justs. of Superior Ct.,*
208 Mass. 162 (1911) ........................................................................................14

*Cutting v. City of Portland,*
802 F.3d 79 (1st Cir. 2015) ...............................................................................18

*Cutting v. City of Portland,*
2014 U.S. Dist. LEXIS 17481 (D. Me. Feb. 12, 2014) .....................................18

*Dobbs v. Jackson Women's Health Org.,*
597 U.S. 215 (2022) ............................................................................................2

*Forrester v. White,*
484 U.S. 219 (1988) ............................................................................................6

*Globe Newspaper Co. v. Superior Court*,
457 U.S. 596 (1982) ...................................................................................2, 3

*La Liga de Ciudades de P.R. v. Fin. Oversight & Mgmt. Bd. for P.R.*
*(In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
110 F.4th 295 (1st Cir. 2024) ...............................................................4

*McBreairty v. Brewer Sch. Dep't*,
783 F. Supp. 3d 394 (D. Me. 2025) ......................................................4

*McCullen v. Coakley*,
573 U.S. 464 (2014) ...................................................................8, 9, 10

*Naser Jewelers, Inc. v. City of Concord*,
513 F.3d 27 (1st Cir. 2008) .................................................................10

*O'Coin's, Inc. v. Treas. of Worcester Cnty.*,
362 Mass. 507 (1972).........................................................................14

*O'Keefe, et al. v. C & C Hospitality, LLC, et al.*,
Case No. 2483cv00692 (Plymouth Sup. Ct. filed Aug. 26, 2024).........................2

*Perry Education Assn. v. Perry Local Educators' Assn.*,
460 U.S. 37 (1983) ...............................................................................7

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) .........................................................................7, 8

*Richards v. Jefferson Cty.*,
517 U.S. 793 (1996) ...........................................................................15

*Roe v. Wade*,
410 U.S. 113 (1973) .............................................................................2

*Schenck v. Pro-Choice Network of W.N.Y.*,
519 U.S. 357 (1997) .............................................................................5

*Sheppard v. Maxwell*,
384 U.S. 333 (1966) .............................................................................5

*Spicuzza v. Commonwealth*,
494 Mass. 1005 (2024).......................................................................16

*Stevens v. Osuna*,
    877 F.3d 1293 (11th Cir. 2017)..............................................................5

*United States v. Chin*,
    913 F.3d 251 (1st Cir. 2019) ..................................................................3

*United States v. Kokinda*,
    497 U.S. 720 (1990)................................................................................7

*United States v. Tsarnaev*,
    Case No. 1:13-cr-10200-GAO (D. Mass. filed Jun. 27, 2013) ............3

*United Student Aid Funds v. Espinosa*,
    559 U.S. 260 (2010)..............................................................................16

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989)..............................................................................11

*Wash. State Grange v. Wash. State Rep. Party*,
    552 U.S. 442 (2008)................................................................................7

*Zenith Radio Corp. v. Hazeltine Research*,
    395 U.S. 100 (1969)..............................................................................15

*Zenon v. Guzman*,
    No. 3:16-cv-30129-MAP, 2018 U.S. Dist.
    LEXIS 2701 (D. Mass. Jan. 8, 2018) .....................................................6

**STATUTES**

42 U.S.C. § 1983 ..........................................................................................4, 6

G.L. c. 268, § 13A.......................................................................................9, 12

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I .........................................................................1, 7, 14, 18

U.S. Const. amend. XI...................................................................................3, 5

U.S. Const. amend. XIV..............................................................................3, 14

**ARGUMENT**

Neither the brief of the Trial Court/Cannone nor the brief of Noble/Morrissey demonstrates that Appellee Cannone's supplemental buffer zone order should not have been enjoined in its entirety. This matter is not moot where it is undoubtedly capable of repetition yet evading review. The individual appellees are not immune; notably, Appellee Cannone entered the injunctive orders in the complete absence of jurisdiction. The content-based supplemental order fails First Amendment strict scrutiny. And the buffer zone violates due process, entered in the absence of jurisdiction over Appellants, without notice or opportunity to be heard, in terms too vague for the ordinary person to understand.

## 1.0 Injunctive Relief is Not Moot

According to the government, if they violate the First Amendment for only a short period of time, they can do so with impunity. That is not how fundamental rights work and it is an indefensible notion if the rule of law or the Constitution are of any value at all.

The government is correct that the prosecution of Karen Read has concluded and the Buffer Zone injunction order has, technically, expired.[1] However, Ms. Read

---

[1] Appellees never before argued that the Supplemental buffer zone order, entered after this Court recommended that some form of supplemental order be entered, was not properly challenged. It should not be entertained for the first time here. Moreover, the point of this appeal is because not even the supplemental order could save the buffer zone from its fatal flaws.

- 1 -

remains the defendant in a wrongful death action (*O'Keefe, et al. v. C & C Hospitality, LLC, et al.,* Case No. 2483cv00692 (Plymouth Sup. Ct. filed Aug. 26, 2024)) and filed her own claim against her accusers (*Read v. Proctor, et al.*, Case No. 1:25-cv-13588 (D. Mass.)). And, if Ms. Read was, in fact, framed, the real killer could face prosecution. Trials in those actions would engender demonstrations by Appellants and a similar Buffer Zone injunction order may enter. Given that Judge Cannone has usurped this power in the past, there is a clear indication that she will do so again, since nobody has yet told her "no."

Though overturned on other grounds, it remains good law that "the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. … It truly could be capable of repetition, yet evading review." *Roe v. Wade*, 410 U.S. 113, 125 (1973) (quotation marks omitted).[2] The trial of Karen Read ended three months from when the second motion for a buffer zone was filed—one third of the human gestation period. Buffer zone injunction orders fit the exception; as the Supreme Court held as to mandatory closure orders, "because criminal trials are typically of short duration, such an order will likely evade review, or at least considered plenary review in this Court." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982) (cleaned up).

---

[2] The Supreme Court did not address, let alone overturn, the nonmootness determination in *Roe* when it determined that abortion is not a right under the U.S. Constitution. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).

The government asserts that the "capable of repetition" exception is not met because it is merely speculative. Yet, the government ignores the *Czerkawski*, *Lopes*, and *Tsarnaev* cases cited by Appellants (Br. at 14-15) where such orders were sought and, in one instance, obtained.[3] Attempting to narrow the circumstances to the particular criminal defendant, the particular geographic layout of a courthouse, and the particular areas of demonstration, among other criteria, would be like saying Ms. Roe would have needed to get pregnant under the same circumstance, by the same man, and have the same desires *vis-à-vis* that pregnancy, which is what the Supreme Court rejected. This Court previously determined that repeated judicial violations across multiple cases qualified for the exception. *See United States v. Chin*, 913 F.3d 251, 257 (1st Cir. 2019). And, like in *Globe Newspaper*, Appellants and others will likely be subjected to another buffer zone order. Thus, the matter is not moot.

## 2.0 Appellee Cannone is Not Immune

Appellants concede that, as an arm of the state, the Trial Court is not subject to suit under current Eleventh Amendment and Section 1983 jurisprudence. One would think that since the Fourteenth Amendment came after the Eleventh Amendment, the Fourteenth Amendment and its enforcement legislation (Section

---

[3] *Commonwealth v. Czerkawski,* Case No. NOCR2103-1094 (Norfolk Sup. Ct. Mar. 16, 2018); *Commonwealth v. Lopes,* Case No. 1882CR00309 (Norfolk Sup. Ct. filed Jan. 31, 2023); and *United States v. Tsarnaev,* Case No. 1:13-cr-10200-GAO (D. Mass. filed Jun. 27, 2013).

1983) might actually be able to restrict states. One might also think the Commonwealth would consent to suit in order to attempt to vindicate its position. Yet that is not the case, and Appellants are bound by that jurisprudence as to the Trial Court.[4]

As to Appellee Cannone, she is not immune; only prospective declaratory relief against her is sought. The government essentially argues mootness again, because she does not have an ongoing role in the Read case, but she needs to be told she was wrong so that she (one hopes) abides and does not do it again. There is a "current utility of a declaration as to the lawfulness of particular acts described in the complaint to determine the parties' rights and obligations going forward." *La Liga de Ciudades de P.R. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 110 F.4th 295, 323 (1st Cir. 2024) (determining a declaration as to retrospective concern to be appropriate); *accord McBreairty v. Brewer Sch. Dep't*, 783 F. Supp. 3d 394, 412 (D. Me. 2025) (granting declaratory relief even where injunctive relief was moot). Appellee Cannone entered buffer zone injunction orders twice in the Read prosecution and did it in at least one other prior matter. She has a proven track record and habit of usurping power that nobody

---

[4] Appellants reserve the right to challenge such jurisprudence in the Supreme Court. Separately, one would have hoped that the Commonwealth would waive any such immunity in order to ensure that the rights of citizens are not displaced, but it appears the Commonwealth does not care to allow the courts to restrain their violations.

granted to her.  Thus, she remains a proper defendant and is not immune under the 11th Amendment.

Neither does Appellee Cannone enjoy common law judicial immunity.  First, she was not acting in a judicial capacity—she was acting in a legislative capacity. Appellee Cannone confesses as much. (Tr. Ct. Br. at 41). Appellants were not parties before her (and the Commonwealth says they had no right to be) nor were they otherwise made subject to her jurisdiction.  She legislated beyond courthouse property, into the streets and sidewalks (traditional public forums) and even onto private property. The government's citation (Tr. Ct. Br. at 20) to *Schenck v. Pro-Choice Network of W.N.Y.*, 519 U.S. 357, 380–81 (1997), is misplaced; in *Schenck*, the defendants were parties within the jurisdiction of the court, but Appellants were not parties to the Read prosecution. The government asserts that Appellee Cannone is immune even if she acted in *excess* of jurisdiction, but recognizes that she is not immune if she acted "in clear absence of all jurisdiction[.]" (Tr. Ct. Br. at 20). Appellee Cannone acted in clear absence of all jurisdiction; the government even concedes she was *legislating*. "A judge's authority to maintain control of his courtroom extends to the court building." *Stevens v. Osuna*, 877 F.3d 1293, 1307 (11th Cir. 2017). Although "the courtroom and courthouse premises are subject to the control of the court[,]" the government points to no authority suggesting anything beyond that is.  *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966). Appellee Cannone

had no authority to govern beyond court property. Appellee Cannone had no jurisdiction over Appellants, let alone over the streets and sidewalks. But she has interpreted the absence of being told "no" as a license to act any way she wants.[5]

Nor is she immune under Section 1983. The government makes a "heads, I win, tails, you lose" argument that says she can only be sued for injunctive relief if she violates a declaratory decree, but then says she is immune from a declaratory judgment action. (Tr. Ct. Br. at 21). That is a convenient position to take. The government would render Section 1983 and constitutional rights null so long as a judge violates those rights. That cannot be the case. Moreover, the case they cite, *Zenon v. Guzman*, No. 3:16-cv-30129-MAP, 2018 U.S. Dist. LEXIS 2701, at *14-15 (D. Mass. Jan. 8, 2018), is inapposite—judicial immunity was explicitly cabined to "disputes between parties who have invoked the jurisdiction of a court." *Id.,* quoting *Forrester v. White*, 484 U.S. 219, 227 (1988). Appellants did not invoke the Norfolk Superior Court's jurisdiction—and Appellee Cannone's order denying

---

[5] If this power is to be usurped by Judge Cannone, then why should every judge in this Circuit not also usurp such power? Why should a judge not declare that there shall be no speech, ever, within 500 feet of a courthouse on the pretext that a juror might hear *something*? Or no expectation of privacy within a mile for the sake of "safety"? What limits the power of every judge in the Circuit if this Court blesses the notion that as long as a judge says it, with power or without, that judge simply controls a limitless fiefdom so long as there is a tenuous connection to the courthouse? There is a term for limiting one's own power because of principle – the rule of law.

intervention before the first trial highlights that they could not have been such a party. Appellee Cannone remains a proper party.

Finally, the government's argument that the relief sought goes beyond the Complaint is misplaced. Prohibiting such buffer zone orders would enjoin the defendants from interfering with the right to engage in constitutionally protected expression and activity within Dedham, Massachusetts. Appellee Cannone claimed no limit to her authority. The relief sought here is but a subset of the relief sought in the Complaint. Thus, there is no basis to dismiss the appeal.

**3.0    The Buffer Zone Violates the First Amendment**

"Regulation of speech activity on governmental property that has been traditionally open to the public for expressive activity, such as public streets and parks, is examined under strict scrutiny." *United States v. Kokinda*, 497 U.S. 720, 726 (1990), citing *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983). It must be narrowly tailored to serve a compelling state interest. *See Wash. State Grange v. Wash. State Rep. Party*, 552 U.S. 442, 451-52 (2008). The Commonwealth must prove both elements. *See Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015). It failed on both.

Appellants note that the government does not contest or address Appellants' point that the post-deprivation procedures of the order were inadequate. Nor does the government contest or address Appellants' point that the restrictions were on

traditional public forums that required beyond intermediate scrutiny. Their only real argument is that it is a content neutral restriction that satisfies intermediate scrutiny. It is not and it does not.

Contrary to the governments' assertion, the Supplemental Order is not content neutral.[6] Regulations on speech are not content neutral if they regulate it based upon its subject matter or based upon its function or purpose. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015). A regulation lacks content neutrality, and requires strict scrutiny, if it is aimed at a certain subject matter, even if it is viewpoint neutral. *McCullen v. Coakley*, 573 U.S. 464 (2014); *Reed* at 169.

Notably, Judge Joun specifically proclaimed what content would be permitted under the order and what content would not; the government filed no cross-appeal, though they disagree with his conclusion that the Supplemental Order requires "enforcement authorities to examine the content of the message that is conveyed to determine whether a violation occurred," ADD011 (*quoting McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (cleaned up)). Enforcement depends upon examining the content or intent of the communication before determining whether the restriction applies. *Coakley* specifically warned us that this renders a restriction content-based.

---

[6] Because Appellees Noble and Morrissey adopt the arguments of the judicial appellees, and present no argument not otherwise subsumed within the brief of the judicial appellees (the "Trial Court Brief" or "Tr. Ct. Br."), citation is only made to the latter, though this reply is directed to both briefs.

573 U. S. at 479.  A hat sporting a Red Sox logo would be permitted; a hat sporting a "FKR" logo would not.  In support of content neutrality, they argue that authorities could do so "irrespective of the message…by examining the protestors' expressive conduct[.]" (Tr. Ct. Br. at 24).  Except "examining the protestors' expressive conduct" *is content discrimination*.  In a footnote, the government argues that the Supplemental Order satisfies strict scrutiny (Tr. Ct. Br. at 24 n. 6), but this is merely conclusory.  It does not satisfy intermediate scrutiny and it most certainly does not satisfy strict scrutiny.

This is not a case about G.L. c. 268, § 13A, which is the analog of the statute at issue in *Cox v. State of La.*, 379 U.S. 559 (1965); the State Police did not need any buffer zone order to enforce Section 13A.  They could simply enforce it. Appellee Cannone legislated over traditional public forums, in the guise of an injunction against Appellants, *beyond* the text of Section 13A.  This case is not about Ms. Read's right to a fair trial; it is solely about insulating the police, prosecution, and judiciary from public criticism.  If there was any fear about a fair trial, Ms. Read would have been the movant, not the Commonwealth.

And even if it were about ensuring a fair trial, Section 13A alone was sufficient; Appellee Cannone's orders lack the requisite tailoring.  A hat with "FKR" pointing *away* from the courthouse where no trial participant could ever possibly see it would not interfere with a fair trial, nor would the other content Judge Joun said

was prohibited. It might, however, cause non-trial participants who see it to question the government – and *that* is what the entire point of this unconstitutional buffer zone was. An ordinary noise level restriction or timing restriction to when jurors enter and exit, or taking measures to ensure jurors heard and saw no demonstrator would have been far more narrowly tailored than the broad-brush orders. It would have made sense. It would likely have been constitutional. But the point of the buffer zone was not about guaranteeing a fair trial, it was to protect the government from criticism.

The government claims Appellee Cannone considered alternatives, but identifies none except for an order that lacked the *mens rea* requirement that this Court determined would be necessary. (Tr. Ct. Br. at 29). That she *considered* an order with mildly smaller geographic borders hardly satisfies the duty to consider alternatives (and Appellants had no opportunity to even appear and argue for them). Under strict scrutiny, the government must adopt "the least restrictive means of achieving a compelling state interest." *Coakley*, 573 U.S. at 478. The government does not argue that it was the least restrictive means, but rather argues narrow tailoring under intermediate scrutiny does not require that it be the least restrictive. (Tr. Ct. Br. at 29). Even, again, if intermediate scrutiny applied, the government fails to show that a fair trial would be less effective absent supplemental order. *See Naser Jewelers, Inc. v. City of Concord*, 513 F.3d 27, 34-35 (1st Cir. 2008), *quoting*

*Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989).  Whitey Bulger had a fair trial.  Dzhokhar Tsarnaev had a fair trial.  Aaron Hernandez had a fair trial.  All were high profile prosecutions with an opinionated public; none of them needed a ban on demonstrations.  (Of course, none of those cases had the public criticizing judge who took it upon herself to ban such criticism.)  Even if one were to credit the uncorroborated statements of the anonymous juror and the State Police sergeant who Judge Joun determined violated the rights of Tom Derosier and Erica Walsh that demonstrators could be heard during the first trial, it did not affect Ms. Read's right to a fair trial then and did not justify any burden beyond, perhaps, a decibel-level imposition.  Signage and clothing restrictions have nothing to do with noisiness.

Restrictions on the messages and writings (signage and clothing) burdened far more speech than necessary to address the possibility that jurors *might* hear *some* noise (which had nothing to do with a fair trial anyhow). There was no credible evidence of anyone harassing or being hostile to jurors. There is no evidence restrictions on the messages and writings that could not be understood or seen in the courthouse had any effect on the administration of justice. By the government's argument, Appellee Cannone could have issued an order that anyone who drives past the courthouse is subject to arrest, because cars might be heard inside the courthouse, but that is abhorrent to a free society. If the problem is that the Dedham courthouse had windows, the solution is to board them up, not restrict citizens.

The *mens rea* requirement did not narrowly tailor the order. It left it up to police to guess at what is "intended to influence" the administration of justice. How, for example, is a hat with three letters pointing away from the courthouse "intended to influence" the administration of justice as opposed to wanting to be seen by news media? Political protest, like a shirt saying "**criminals control Norfolk County**" led to an arrest under the order, despite it having nothing to do with the administration of justice (let alone a fair trial, which is the actual interest). Massachusetts State Police threatened Mr. Grant for holding an American flag and a Bible verse: 2 Corinthians 3:17 ("Now the Lord is the Spirit, and Where the Spirit of the Lord is, There is Freedom") and barred him from demonstrating with it, which had nothing to do with a fair trial. All the order should have said is "don't violate Section 13A," but it went beyond that.

Moreover, the government fails to appreciate that by identifying certain statements, as Judge Joun did, as *per se* violations, *mens rea* was eviscerated. Instead, they just attempt to handwave away the actual order of the District Court. (Tr. Ct. Br. at 35). Nor do they justify the size—there was no measurement of sound vs. distance. Comparisons to voting sites are inapposite—election communications happen everywhere and polling site restrictions thus leave open ample channels. But news media covers a trial at the courthouse.

Nor was there competent evidence that the geographic restriction targeted where "interruptions" occurred, only a vague statement from a juror and the hearsay of a State Police sergeant, who has a history of violence regarding the exercise of First Amendment rights relative to this case, who gave no specifics. And even if the additional areas were appropriate, the 200-foot zone was not sufficiently evidenced. No evidence justified restrictions on written messaging or attire. A noise restriction, by distance, would have been far better tailored.

Finally, it is absurd to suggest that Appellants could demonstrate "where the audience is" and with a "focus on the courthouse" when specific messages were expressly deemed a *per se* violation. Alternate channels of communication were not left open. The buffer zone order (as supplemented) fails intermediate scrutiny (which does not even apply) and certainly does not satisfy strict scrutiny (which is not argued except in a conclusory manner).

**4.0 Appellants were Denied Due Process**

The vague buffer zone injunction orders were issued against Appellants by a court that lacked any power over them and failed to afford them notice and an opportunity to be heard. Appellees fail to overcome this trifecta of due process violation.

First, Appellees attempt to sidestep the jurisdictional issue by focusing on purported "inherent authority." (Tr. Ct. Br. at 39-41). They fail to address the fact

that Appellee Cannone was making orders enjoining the speech and conduct of Appellants and others who never were brought within the jurisdiction of the Court. The "environment of the court" has nothing to do with what goes on down the block, in private houses, or on public sidewalks,[7] all outside the courthouse grounds. *See id.* at 39 (quoting *Chief Admin. Just. of the Trial Court v. Lab. Rels. Comm'n*, 404 Mass. 53, 57 (1989)). Appellants never entered the "environment of the court." *See, e.g., Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966) ("The carnival atmosphere at trial could easily have been avoided since *the courtroom and courthouse premises are subject to the control of the court*") (emphasis added). The government cites a case that says that the Court has the power to change venue to get a fair and impartial jury. *Crocker v. Justs. of Superior Ct.*, 208 Mass. 162 (1911).[8] And it cites a case that a judge can spend money to ensure that the court can function. *O'Coin's, Inc. v. Treas. of Worcester Cnty.*, 362 Mass. 507 (1972). By the government's argument, a court in Fall River could shut down an industrial plant in Rhode Island if a speck of the plant's exhaust might enter the court's HVAC system.

---

[7] Appellees also suggest that these sidewalks might not have been traditional public forums (Tr. Ct. Br. at 40), but they fail to show otherwise.

[8] While *Crocker* has not specifically been overruled, the Court should not ignore that it was decided before most First and Fourteenth Amendment jurisprudence even existed – before even Holmes' dissent in *Abrams v. United State*s, 250 U.S. 616, 624 (1919). Yet the government wants it to stand for the proposition that the First Amendment does not apply if a judge finds the First Amendment inconvenient.

The government's sole discussion of jurisdiction is a simple conclusory dismissal saying that Appellants did not offer any meaningful argument why the superior court would not have personal jurisdiction over those who violated the buffer zone injunction order, but it fails to show that the superior court had jurisdiction over Appellants to begin with. (Tr. Ct. Br. at 40). Appellee Cannone's orders were injunctions, and the U.S. Supreme Court prohibits injunctions against nonparties, *i.e.* "persons who act independently and whose rights have not been adjudged according to law[,]" for "[t]o subject them to such peril violates established principles of equity jurisdiction and procedure." *Chase Nat'l Bank v. Norwalk*, 291 U.S. 431, 437 (1934). Specifically, "[i]t is elementary that one is not bound by a judgment *in personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process. The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 110 (1969) (internal citation omitted). Nonparties to a lawsuit, who received "neither notice of, nor sufficient representation in" the proceedings, cannot be bound by a decision "as a matter of federal due process." *Richards v. Jefferson Cty.,* 517 U.S. 793, 805 (1996). Appellees offer no exception to this rule. Appellee Cannone lacked jurisdiction over Appellants when she purported to enjoin them.

Neither did Appellants have proper notice and opportunity to be heard. "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds v. Espinosa*, 559 U.S. 260, 272 (2010) (cleaned up). They were not served with the Commonwealth's motion. They had no ability to participate at the hearing or intervene to oppose that motion. *See Spicuzza v. Commonwealth*, 494 Mass. 1005, 1007 (2024); *Commonwealth v. Read*, Case No. 2282CR0117 (Norfolk, Mass. Apr. 4, 2024). The government does not even argue that Appellants could have been heard before the injunctive orders were issued; they only point to post-deprivation procedures (added solely to the Supplemental Order). (Tr. Ct. Br. at 41-42). Pre-deprivation procedures were required. *See 3137, LLC v. Town of Harwich,* 126 F.4th 1, 12 (1st Cir. 2025). That the ACLU at one point submitted an *amicus* brief is immaterial—*amici* are not parties and have no rights, as this very Court demonstrated in the prior appeal.[9] And the post-deprivation procedures were otherwise inadequate—there was no ability to subpoena or confront witness, no damages were available, and the only "remedy" was to declare that the order was or was not violated (not whether the order might

---

[9] The ACLU is not a proxy for everyone's civil liberties. They have their own interests, which may or may not have aligned with Appellants and the other demonstrators.

be unconstitutional as applied), without any relief in the event of a violation.[10]

Appellee Cannone issued an injunction against Appellants who had no ability to contest it *before* it was issued and that is the hallmark of a due process violation.

Finally, the Supplemental Order was still vague and still unconstitutional. Even the state police had no idea what it meant – they arrested Erica Walsh for a shirt Judge Joun said was permitted, injured Thomas Derosier for merely filming, and demanded Jason Grant cease display of a Bible verse, telling him that despite the Supplemental Order "nothing has changed." AA373. Although Judge Joun said it was not vague, why, then, did he feel it necessary to provide his own list of statements he approved of and disapproved of? Ordinary people could not discern what speech was permitted and what speech was not. Thus, in addition to a lack of jurisdiction and a lack of notice and opportunity to be heard, vague nature of the Supplemental Order violated due process.

## 5.0 The Remaining Factors Warrant Injunctive Relief

Appellants will suffer irreparable harm and the equities and public interest favor Appellants. The trial court appellees do not deny that the loss of First

---

[10] The government also argues that Appellants, in a post-deprivation review, could have petitioned a Single Justice (Tr. Ct. Br. at 43), but they fail to show the Single Justice could award any relief other than a retrospective declaration that would give a petitioner nothing for the violation of their rights. Moreover, when the government violates the federal constitution, federal court is the appropriate place to seek a remedy.

Amendment freedoms for even a moment is irreparable harm. Instead, the trial court

appellees argue mootness again. (Tr. Ct. Br. at 46-47). Yet it is precisely because

these types of orders will undoubtedly evade review that the harm is irreparable.

Appellees Noble and Morrissey claim that Appellants themselves caused delay,

undercutting injunctive relief. (Op. Br. at 25). There were no such delays.

The trial court appellees make the same mootness argument regarding balance

of hardships. (Tr. Ct. Br. at 47). Notably, they make no argument that they would

suffer any prejudice were Appellants to be granted the relief sought. Nor do the trial

court appellees dispute that the balance of equities otherwise favors Appellants and

other demonstrators were such an order reinstated or reissued in another proceeding.

Appellees Noble and Morrissey make argument regarding unsubstantiated noise

claims (Op. Br. at 25), but even if they were substantiated, it does not justify content-

based restrictions nor restrictions on signage.

And, again, the trial court appellees argue mootness with respect to public

interest. (Tr. Ct. Br. at 47). The trial court appellees ignore that the public has an

interest in protecting freedom of speech. *See Cutting v. City of Portland,* 2014 U.S.

Dist. LEXIS 17481, at *36 (D. Me. Feb. 12, 2014) *aff'd*, 802 F.3d 79 (1st Cir. 2015)

("Protecting rights to free speech is *ipso facto* in the interest of the general public."

(internal quotation marks omitted)). Appellees Noble and Morrissey argue that

protecting the jury from extraneous influences is in the public interest

(Noble/Morrissey Br. at 25), but there is no evidence there was ever such influence from anything that the Appellants wanted to do. At most, it was noise that could be heard, but it had no effect on deliberations. Thus, the remaining factors favor injunctive relief.

## CONCLUSION

In light of the foregoing, the Court should reverse the District Court's denial of the preliminary injunction and remand for the entry of an injunction prohibiting all such buffer zone orders and for further proceedings.

Date: December 23, 2025. Respectfully submitted,

/s/ Marc J. Randazza

Marc J. Randazza (Bar No. 90629)
Jay M. Wolman (Bar No. 1135959)
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (888) 887-1776
ecf@randazza.com

Mark Trammell
Center for American Liberty
P.O. Box 200942
Pittsburgh, PA 15251
Tel: (703) 687-6200
MTrammell@libertyCenter.org

*Attorneys for Appellants.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 4,758 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Date: December 23, 2025.              RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
MARC J. RANDAZZA

# CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: December 23, 2025.　　　　　RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
MARC J. RANDAZZA